## CHAPIN & MASTICK *v.* BRODER *et als.*

UNDER the Practice Act, as it stood in 1854, a party who failed to file with the Clerk a memorandum of costs within the time limited, waived his right to costs, whether they were Clerk's and Sheriff's fees or other costs; and in the absence of such memorandum, the Clerk had no power to include costs in the judgment.

If the Clerk's and Sheriff's fees were inserted in the judgment, when not so claimed, the judgment is so far a nullity, and may be attacked collaterally.

The New York cases do not apply, because there, costs are taxed by the Clerk, on notice to the adverse party; but no time is fixed within which the notice must be given, and the costs are not waived by failure to give it.

After a judgment is entered, and the record completed, the Clerk has no power to fill up the blank left for costs. His authority terminates with the entry of the judgment, and the Court alone, on motion to amend, is competent to relieve where costs are omitted.

Where costs, on appeal to the Supreme Court, are not entered on the judgment docket in the Court below, they do not become a lien on property until the levy of an execution.

If an undertaking on appeal to the Supreme Court be insufficient in amount to stay proceedings, the lien of the judgment is not extended by the appeal beyond two years from the time of its docketing; and this, where the undertaking was excepted to, there being no effort to enforce the judgment pending the appeal.

Chapin *v.* Broder.

*Dore* v. *Covey*, (13 Cal. 502) and *Dewey* v. *Latson*, (6 Id. 130) commented on.

Where, in a foreclosure suit, the judgment is in the usual form—ascertaining the amount due, directing a sale of the mortgaged premises, application of the proceeds to the payment of the debt, providing for the recovery of any deficiency, and authorizing execution for the same—such judgment does not become a lien on the real estate of the debtor from the time it is docketed.

Section two hundred and forty-six of the Practice Act authorizes, in foreclosure suits, a personal judgment against the mortgagor, in addition to the relief usually granted; and such personal judgment, when docketed, becomes a lien. But the mere contingent provision, for execution, in case of deficiency, etc., does not amount to a personal judgment, and to such provision no effect can be given as a judgment lien, until the amount of the deficiency to be recovered has been ascertained and fixed.

In this latter case, the limitation upon the lien does not commence to run until the deficiency be ascertained, and an execution can be issued therefor.

APPEAL from the Third District.

Suit against several parties, among whom were Broder, Sheriff, Freaner and Hibberd, to quiet title to a tract of land in Alameda county, containing about four hundred and forty-six acres, originally owned by W. W. Chipman and Gideon Aughenbaugh, and to restrain these defendants from obtaining a deed from Broder on sales made by him as Sheriff. The question involved is one of priority between purchasers at Sheriff's sales.

The case was referred to John Currey, who reported a decree in favor of Mastick for two hundred and twenty-three acres, through the Drexel, Sather & Church judgment, and in favor of Hibberd for the two one hundred and eleven acre tracts, through his own judgment. The report was confirmed by the Court. Chapin appeals from this decision as against Hibberd; Freaner appeals from it as against Mastick; and Hibberd appeals from it also, as against Mastick, claiming the whole.

The facts, as found by the Referee, are as follows:

### HIBBERD'S CLAIM.

On the first of March, 1855, Hibberd recovered a judgment in the District Court of Alameda, against Chipman and Aughenbaugh, for $8,600, and five hundred and thirty-six dollars and fifty-five cents costs. This judgment was properly docketed on the same day. Before the judgment was in fact rendered, the defendants, Chipman and Aughenbaugh, filed a notice of appeal to the Supreme Court. On the entry

of judgment, the Court made an order staying proceedings for ten days.   On the sixth of March, 1855, Chipman and Aughenbaugh filed an undertaking for three hundred dollars costs, in due form, and a further undertaking in the sum of $17,200, to stay execution.   On the tenth of March, 1855, Hibberd excepted to the sufficiency of the sureties; and five days afterward, by stipulation, he gave Chipman and Aughenbaugh five days' further time to procure an additional surety. On the twenty-fourth of March, 1855, Chipman and Aughenbaugh filed a new undertaking with other sureties, in the sum of $8,600, to stay execution.

These undertakings were all in due form, and not liable to any objection, except in respect to the amounts.   No execution was issued pending the appeal, nor was any objection made to the undertakings by Hibberd, further than his notice of exception to the sufficiency of the sureties on the first undertaking, which notice does not appear to have been served on the defendants, nor does it appear that the exception was insisted upon.

On the twelfth of May, 1856, the Supreme Court affirmed the judgment, and on the twenty-seventh of the same month, the *remittitur* was filed in the Court below.

On the twenty-second of October, 1856, execution was issued on the judgment, and on the seventeenth of November, 1856, the Sheriff sold to Hibberd, under this execution, two tracts of land, described by metes and bounds, containing each about one hundred and eleven acres, and being the one-half of the whole tract.

The sale purports to have been of all the right, title, and interest which Chipman and Aughenbaugh had in the land sold, on the first of March, 1855, the day of the docketing of the judgment.

On the seventh of July, 1858, the Sheriff executed to Hibberd the proper deed of conveyance of these two parcels of land, in pursuance of his sale.

On the fifth of April, 1858, an *alias* execution was issued on the judgment, and under it, on the thirtieth day of April, 1858, the Sheriff sold to Hibberd the right, title and interest which Chipman and Aughenbaugh had, on the first of March, 1855, in the whole tract of four hundred and forty-six acres; and on the day of sale the Sheriff executed to Hibberd a certificate of sale.   This last sale included the land previously sold to Hibberd, on the seventeenth of November, 1856, as well as the balance of the four hundred and forty-six acres not before sold.

CHAPIN & MASTICK'S CLAIM.

On the twenty-third of August, 1854, in the District Court of Alameda county, a judgment was rendered in an action of Chipman and Aughenbaugh against Briggs and McGowan.

The judgment, as entered in the judgment book, after reciting that the cause was tried by the Court, and that the Court had filed its findings in favor of defendants, runs thus: "It is, therefore, ordered, adjudged, and determined, that said defendants do have and recover of and from said plaintiffs their costs and charges in and about this suit, paid, laid out and expended, taxed at one hundred and twenty-seven dollars and fifty cents. No bill of costs filed by defendants within the time specified by law."

This judgment, as it appears in the judgment roll, is the same, excepting that the figures, "one hundred and twenty-seven dollars and fifty cents" are omitted—a blank being left.

In the minutes of the Court, there is a blank for the amount of costs. The following is a copy of the judgment docket in this case, and in the case of Hibberd:

| Chipman & Aughenbaugh. | Judgment Debtors. | Chipman & Aughenbaugh. | Judgment Debtors. |
|---|---|---|---|
| Briggs & McGowan. | Judgment Creditors. | James F. Hibberd, | Judgment Creditors. |
| Clerk's & Sh'ff's fees, $127.50 (No bill of costs filed.) | Judgment. | $8,600, costs $536.55, Restitution of Lands. | Judgment. |
| August 22, 1854. | Time of Entry. | March 1, 1855. | Time of Entry. |
| "A," Page 55. | Where entered in Judgment Book. | "A," Page 169-70. | Where entered in Judgment Book. |
| Sept. 4, 1854. | Appeals, when taken. | May 17, 1855. | Appeals, when taken. |
| Affirmed, with costs. | Judgment of Appellate Court. | Judgment affirmed. | Judgment of Appellate Court. |
| | Satisfaction of Judgment, when entered. | | Satisfaction of Judgment, when entered. |

On the fourth of September, 1854, the plaintiffs appealed to the Supreme Court. The judgment was affirmed, February 5th, 1855, with costs, amounting to ninety-eight dollars and fifty cents.

The *remittitur* was issued from the Supreme Court on the nineteenth of February, 1855, and filed in the Court below on the sixth of March, 1855, and a minute of the judgment of affirmance entered on the docket of the judgment.

On the twenty-eighth of August, 1855, an execution was issued from

Chapin v. Broder.

the District Court of Alameda county, in favor of Briggs and McGowan, and against Chipman and Aughenbaugh, in which it was recited that there was a judgment of said Court, of August 22d, 1854, for one hundred and twenty-seven dollars and fifty cents, and that this judgment had been affirmed by the Supreme Court, with ninety-eight dollars and fifty cents costs, and the Sheriff was directed to make the amount of these costs. Under this execution, the Sheriff sold the whole tract, of four hundred and forty-six acres, to one E. S. Chipman, on the twenty-second of October, 1855, and executed a deed to him on the twenty-third of April, 1856.

On the ninth of September, 1856, E. S. Chipman conveyed to the plaintiff, Mastick, the one-half of the land, two hundred and twenty-three acres, by metes and bounds, being the same half which Hibberd claims to have last purchased, under his *alias* execution; and on the twenty-second of October, 1856, E. S. Chipman conveyed to the plaintiff, Chapin, the residue of the land, being the same two tracts, of one hundred and eleven acres each, which Hibberd purchased under his first execution.

### MASTICK'S CLAIM.

On the twenty-second of May, 1855, in the same District Court, Drexel, Sather & Church obtained against Aughenbaugh and wife a decree of foreclosure of a mortgage of other lands. The judgment roll was filed, and the decree docketed on the same day. The mortgaged land was sold, and the deficiency reported, on the twenty-fourth of July, 1855. On the twelfth of May, 1857, execution was issued for the deficiency, and under this execution the Sheriff, on the tenth of June, 1857, sold to Drexel, Sather & Church all the interest which Aughenbaugh had in the whole tract of four hundred and forty-six acres on the twenty-second of May, 1855, and in December, 1857, executed a deed to the purchasers, who afterwards conveyed to Mastick.

### FREANER'S CLAIM.

On the twenty-second of November, 1854, in an action against Aughenbaugh and Flint, in the same District Court, Samuel Moss obtained a decree of foreclosure of a mortgage of other lands. A sale of the mortgaged property was made, and the deficiency reported, on the thirty-first of July, 1855. An execution for the deficiency was issued, on the twenty-ninth of November, 1855, and under this execution the Sheriff, on the seventh of January, 1856, sold the interest of

Aughenbaugh and Flint in the tract of two hundred and twenty-three acres, (the one purchased by Hibberd under his last execution) to J. M. Moss, and on the seventeenth of September, 1857, executed a deed to the purchaser. On the twenty-eighth of December, 1857, Moss conveyed to Freaner, one of the defendants.

*A. P. Crittenden,* for Appellant Hibberd.

1. The entry of judgment in favor of Briggs & McGowan for one hundred and twenty-seven dollars and fifty cents, was unauthorized and void. (Pr. Act, secs. 510, 201–206.)

A judgment of the Supreme Court, whether for debt or costs, does not relate back so as to create a lien from the time of the entry of judgment in the Court below; and especially it cannot do so to the prejudice of third persons, who, in the intermediate time, may have acquired liens. (*Jackson* v. *Bard,* 4 Johns. 204.)

At the time of the origin of the lien of Hibberd, there was no judgment in the case of *Chipman & Aughenbaugh* v. *Briggs & McGowan,* which could create any lien on the lands of Chipman & Aughenbaugh, nor authorize the issuing of an execution.

The lien of a judgment arises only upon its being docketed. (Pr. Act, secs. 197–208; *Buchan* v. *Sumner,* 2 Barr. Ch. 194; *Blydenburg* v. *Northup,* 13 How. Pr. 290.)

And where there are several judgments, the one first docketed has the prior lien, though rendered subsequently to the others. (2 Blackf. 208; 8 Wend. 681; 16 Id. 514.)

The judgment of Briggs & McGowan was never docketed and was never a lien, even if it were a valid judgment for costs as entered in the District Court.

And the judgment in that case in the Supreme Court was never docketed; and the execution in that case, even if valid, was levied after the lien of Hibberd attached, and while it was in full force.

2. The decree in favor of Moss was a lien only from the time of the Sheriff's return, and the filing of his report of sale showing that there was a deficiency. Till then the judgment was contingent, and no execution could issue. (*Bank of Rochester* v. *Emerson,* 10 Paige, 115; *Cobb* v. *Thornton,* 8 How. Pr. 66; *McCarthy* v. *Graham,* 8 Paige, 480; Pr. Act, 246; *Rollins* v. *Forbes,* 10 Cal. 300; *Dewey* v. *Latson,* 6 Id. 130; 13 Johns. 534.)

Upon its face, this decree is not a judgment for the amount due to be

satisfied out of the mortgage property, but a mere direction to sell the property and apply the proceeds, with leave to take out execution if the proceeds prove insufficient.

3. The time during which proceedings are stayed, whether by order of the Court or by appeal, is not to be included within the two years allowed by the statute for the existence of a judgment lien. (*Dewey* v. *Latson*, 6 Cal. 130.)

And when an appeal is taken upon the rendition of judgment, the time begins to run only from the time the Supreme Court loses jurisdiction of the case, that is, from the time of the filing of the remittitur in the Court below. (Id.)

The objection that the undertaking given by the defendant to stay execution is not in due form, has no weight. If the plaintiff is content to waive any objection as to amount or form, or submit to any defect, he cannot be thereby placed in a worse position in respect to the duration of his lien. The running of the time of its existence would be suspended, even if he were to waive any undertaking on the part of the defendant. If the undertaking be defective, a new one may be filed.

Notwithstanding the defects in the undertakings given by Chipman & Aughenbaugh, on their appeal from the judgment in favor of Hibberd, no objection on account thereof having been made by Hibberd, the two years only commenced to run from the filing of the remittitur.

*Reynolds & Gray*, for Appellant Chapin and for Mastick.

*A. Campbell*, of Counsel.

I. The judgment in favor of Briggs & McGowan is neither irregular nor void. The Court is of general jurisdiction, and all intendments are in favor of sustaining its action. (*Johnson* v. *Sepulbeda*, 5 Cal. 149 ; *Crane* v. *Brannan*, 3 Id. 495 ; *Alderson* v. *Bell*, April term, 1858 ; *Foote* v. *Stephens*, 17 Wend. 485.)

Section five hundred and ten of the Practice Act, requiring a memorandum of costs to be filed, has no application. There was no " verdict," and the twenty-four hours never commenced to run. The section did not apply to the " decision of the Court." Besides, the section, if applicable, is directory.

We are innocent purchasers at Sheriff's sale, and unless the judgment is absolutely void on its face, it is sufficient. We cannot be affected by the mere irregularity, or omissions, or errors of the Court

27

below. ( *Grignon* v. *Astor,* 2 How. U. S. 341 ; *Reardon* v. *Lacy's heirs,* 2 Bibb. 202; *Woodcock* v. *Bennett,* 1 Cow. 734; 2 Bibb. 518; *Woodcock* v. *Natches,* S. & M. 197 ; *Wood* v. *Jackson,* 8 Wend. 36; 6 Pet. 727 ; 10 Id. 971.)

Again : it is attempted to attack this judgment, not void on its face, in a collateral proceeding between other parties ; this is never allowed; even Chipman and Aughenbaugh could not have done this in an eject-ment brought by the purchaser directly against them.    (9 Cal. 429 ; 8 Johns. 361 ; 26 Id. 574.)

Again : the Supreme Court costs are admitted to be correct, to the amount of ninety-eight dollars and fifty cents.    They relate back to the date of the original judgment, which " opens to receive them," *nunc pro tunc;* they are like interest, Sheriff's fees, etc., all grafts on the original stock, and each of them operates, not from its own date, but from that of the judgment.    (3 Cranch, 92 ; 3 Johns. 540.)

The whole objections and efforts of defendants as to this judgment, resolve themselves into an attempt to retax these costs, at this late day, in a suit between other parties.

It is contended by the defendants, that this insertion of costs is the act of the Clerk, not of the Court.    It is proved to have been inserted by the Clerk himself, the officer and hand of the Court, in strict accord-ance with the custom of that Clerk's office, and with said section five hundred and eleven of Practice Act.    These objections, if good here, would hold good against any judgment for any amount, signed in that Court.    For this was their custom and the law.    The Court gives judg-ment for costs, the amount to be inserted never goes, in fact, before the Court, unless on a motion for the retaxation of costs.    The amount is never ascertained at the time of the judgment by the Court.    The Clerk is to insert them.

II.    Mastick claims also under the judgment in favor of Drexel, Sather & Church. and we contend that his lien on the property in ques-tion began from the report of the deficiency after the sale of the mort-gaged premises under that judgment, to wit: from the twenty-fourth of July, 1855.    (*Dewey* v. *Latson,* 6 Cal. 130.)    No execution could be taken out until the mortgaged lands were sold and the deficiency ascer-tained.    The lien, therefore, under this judgment, precedes the levy in Hibberd's case, fifth of April, 1858, and also precedes the lien by vir-tue of the Moss judgment, under which defendant Freaner claims, as in his case the report of deficiency was not filed until August 24th, 1855.

*H. P. Irving,* for Appellant Freaner.

I.   No title was acquired to the tract of land claimed by Mastick, to wit: the tract of two hundred and twenty-three acres, under the Briggs and McGowan judgment.   1st.  Because the execution for costs of one hundred and twenty-seven dollars was issued, not only without authority, but against the very terms of the judgment as entered.   2d.  Because neither the costs of the Supreme Court of ninety-eight dollars, nor the sum of one hundred and twenty-seven dollars, the pretended costs in the District Court, were docketed so as to create a lien on the real property sold under the execution.   (See 2 Blackf. 208; 8 Wend. 681; 16 Id. 514; *Buchan* v. *Sumner,* 2 Barb. Ch. 194; *Blydenburg* v. *Northop,* 13 How. Pr. 290; Pr. Act, 204–5.)   The law requires that in docketing the judgment, the amount should be stated.   It is not pretended that this was done.   3d.  Because the sale took place on the twenty-second of October, 1855, and even if the execution had been properly issued, it would only have been a lien from the twenty-eighth of August, 1855, some ten months after the recovery of the Moss decree, and four days after the ascertainment of the deficiency under the Moss decree; because, not being docketed, the lien could only date from the levy under the execution.

II.   Mastick's claim, under the Drexel, Sather & Church decree, cannot be sustained.   1st.  Because the Moss decree, under which Freaner claims, was rendered on the twenty-fourth of November, 1854, whilst the Drexel, Sather & Church decree was rendered on the twenty-second of May, 1855, more than six months after the Moss decree.   2d.  Because the sale took place more than two years from the time of the rendition of the decree, and the docketing thereof.

The Moss decree was first rendered, and the question is whether it created a lien, from the day of its docketing, on the real estate of the judgment debtor, other than the mortgaged premises.   The statute is clear.   It defines a judgment to be a final determination of the rights of the parties in the action or proceeding, (Pr. Act, sec. 144) and section two hundred and four makes the judgment a lien from the time it is docketed.

But it is contended that the decree in favor of Moss, created no general lien until the ascertainment of the deficiency.   We invite the strictest scrutiny to the language of the decree of Moss against Flint and Aughenbaugh.   It is in precise conformity to section two hundred and forty-six of the Practice Act.   It adjudges, orders and decrees, that

the defendant pay to the plaintiff the amount due on the mortgage, and directs an execution for the amount of the deficiency, after the application of the proceeds of the mortgaged property to the debt; it adjudicates and determines all the matters in controversy between the parties; it settles everything; it leaves nothing further to be done by the Court. We admit that, but for this statute, it would have been necessary for the mortgagee to obtain first a decree for the sale of the mortgaged premises, and then to have had a report of the amount due upon the debt after the application of the proceeds, and upon that report to have obtained another decree for the deficiency. But the statute, above quoted, has dispensed with this second judgment.

The argument on the other side ignores this statute, as well as other sections of the law in direct conformity therewith. The New York statute is different, and the authorities cited from that State do not apply. The statute of New York authorizes a decree for the sale of the mortgaged premises, and then expressly authorizes a second decree for the deficiency on the coming in of the report of sale. In other words, the statute of California authorizes that to be done by one decree which the statute of New York requires two to effect. (See *Rowland* v. *Leiby*, 14 Cal. 156; *Rollins* v. *Forbes*, 10 Id. 299.)

The lien does not depend, as is contended, upon the capacity to sue out execution, and hence it existed before the report of sale on the decree in *Moss* v. *Flint and Aughenbaugh.* Our statute gives the lien from the time the decree is docketed; and the object of docketing is to notify the creditors and purchasers. But according to the argument on the other side, a party must look to the return of the Sheriff and the report of sale, rather than to the docket of the judgment. Besides, if this be the intention of the statute, it would have required the Clerk to docket the deficiency, instead of the decree.

As to *Dewey* v. *Latson*, (6 Cal. 130) it only means that until the remittitur is filed, the force of the judgment is suspended, not that the lien is lost. The lien exists pending the appeal, although execution cannot be issued. So here the right to issue execution for the deficiency, after sale under the Moss decree, was suspended until the ascertainment of the deficiency, which ascertainment relates back to the docketing of the decree.

As to Hibberd's claim, it is immaterial whether the undertaking on appeal in *Hibberd* v. *Chipman and Aughenbaugh* was sufficient to prevent issuing execution or not. If the undertaking on appeal did not

prevent the issuing of an execution by Hibberd; if his lien commenced running from the docketing of his judgment, March, 1855, then it expired on the first of March, 1857. His sale of the tract took place on the thirtieth of April, 1858, some fourteen months after the lien had expired. If, on the contrary, the undertaking on appeal did prevent the issuing of an execution until the filing of the remittitur, then Hibberd's judgment stood in the same position as the Moss decree, before the ascertainment of the deficiency on the Moss decree. In other words, no execution could be issued upon the Moss decree until the ascertainment of the deficiency; so no execution could be issued on the Hibberd judgment until the filing of the remittitur from the Supreme Court. If the undertaking on appeal stayed the issuing of an execution, then Hibberd's lien commenced on the twenty-seventh of May, 1857, the date of the filing of the remittitur, whilst Freaner's lien commenced upon the twenty-fourth of August, 1855, the date of the report of deficiency. If his right to issue execution was stayed, then the sale was made after his lien expired. Hence, Hibberd has no claim to the two hundred and twenty-three acre tract.

As to Mastick's claim to this tract under the decree of Drexel, Sather & Church, it is inferior to the claim of Freaner, because that decree was docketed May 22d, 1855, while the Moss decree, under which Freaner claims, was docketed Nov. 24th, 1854, and according to the points made above, became a prior lien. Besides, the lien under the Drexel decree had expired—the decree being docketed May 22d, 1855, and the sale taking place June 10th, 1857, more than two years afterwards. The statute runs from the docketing of the decree and not from the ascertainment of the deficiency.

*E. W. F. Sloan*, for Hibberd in reply.

I. There is no error in the decision of the Court below touching the alleged judgment in favor of Briggs and McGowan.

No final judgment was entered up in the District Court; and if the attention of the Supreme Court had been directed to the point, the appeal taken by Chipman and Aughenbaugh must have been dismissed. There was a finding for the defendants, but no judgment or decree upon the subject matter of the suit. (*Lisle* v. *Rhea*, 9 Miss. 172.)

1. The alleged judgment in the judgment book is void on its face, and would be rejected on inspection. It was a rule of the common law, that an entry in Arabic figures could not be received as a record, even when

they appeared within the body of the writing, and were consistent with it. Here, however, there was a manifest alteration at some period subsequent to the date of the writing in the book. The place where the sum would naturally be entered in words, is filled by the statement of a fact, which, in legal effect, was a waiver of costs. (Pr. Act, sec. 510.)  " No bill of costs filed within the time specified by law."

2. In order to charge the defendant in execution, or bind his lands, or to proceed against him by action of debt or *scire facias,* on the judgment, " &c." it is necessary that the judgment should be entered of record and docketed, and the judgment roll carried to and filed in the treasury of the Court. (Tidd Prac. 843.)  The record of *nisi prius* ought to be warranted by the roll, and if it vary from it, it is void. (*Young* v. *Englefield,* Cro. Jac. 670.)  It is the judgment roll which constitutes the record and imports verity.  Our statute has not altered the English rule.  (Pr. Act, secs. 203, 204.)

Upon consulting the roll, we find that the judgment, so called, as entered in the book, is literally copied into it.  No sum is expressed, either in words or figures, but the same statement appears therein—" No bill of costs filed within the time specified by law."

The failure to enter up judgment for costs was not caused by misprision of the Clerk.  He had no power to enter up such judgment, unless a bill of costs, duly verified, had been filed.  The interpolation of one hundred and twenty-seven dollars and fifty cents on the margin of the judgment book, was not an amendment of the judgment; for there was nothing to amend by, and no order appears to have been at any time made, authorizing an amendment.

3. There was no judgment docketed, without which there could be no lien.

In the column under the caption of " Judgment," and in the same continuous line with the names of the parties, plaintiff and defendant, dates, &c., this entry was made:  " No bill of costs filed."

But, it is said that there is another entry inserted in the docket, over the former.  It is this: " Clerk's and Sheriff's fees, one hundred and twenty-seven dollars and fifty cents."

There is nothing to warrant that entry, either in the judgment roll or book.  Neither does the entry itself purport to be the amount of a judgment.

In some of the States, costs are allowed by statute to be taxed up by the Clerk upon the margin of the execution, after judgment, and may

be retaxed at any time, even after the Sheriff has levied the money. But that is not permitted under our statute.    Here, execution for costs cannot issue, except on a judgment for costs duly rendered and entered up for a specific sum. (Pr. Act, sec. 510.)    At common law, neither party recovered costs of the other. (4 Wash. C. C. 107.)    It is not in the power of the Court to give costs, where the statute declares that costs shall not be recovered. (*Juion* v. *Macfadder*, 1 Ashmead, 1; *Bills* v. *Harris*, 2 Vir. Cas. 26.)

4. It is said that the plaintiffs in this case are *bona fide* purchasers, without notice.

They are the assailants, in equity, and cannot rest their case on that position.    The question is, have they shown a perfectly good title, as against the defendants, Hibberd and Freaner, under the sale on execution in favor of Briggs and McGowan ?    In order to do so, it is necessary that they should have proved, not only the existence of a valid judgment against Chipman and Aughenbaugh, but, also, a judgment lien prior in date to the first of March, 1855.

II.    On the first of March, 1855, Hibberd recovered a judgment against Chipman and Aughenbaugh, which was regularly docketed on the same day.    An appeal was perfected on the third of March, (the same month) by filing an undertaking in the sum of three hundred dollars; and, for the purpose of staying execution, in the further sum of $17,200, being double the amount of the plaintiffs' pecuniary judgment, exclusive of costs.    On the twenty-third of the same month, an additional undertaking was filed in the sum of $8,600, being the exact amount of the damages recovered.

One-half of the premises in question was sold under execution, before the lapse of two years from the date of the judgment.    The other half was sold under an alias execution within two years from the date of filing the remittitur from the Supreme Court.    The remittitur was filed twenty-seventh May, 1856, and the sale was made thirtieth April, 1858. If there was a stay of execution, pending the appeal, then the judgment lien had not expired at the time of the second sale. (*Dewey* v. *Latson*, 6 Cal. 130.)

By the common law, a writ of error operated as a supersedeas to the execution without bail. (Tidd Prac. 1074, 1075.)    The stay of execution is not, therefore, a privilege conferred by statute.    The statute simply requires security to be given, for the purpose of indemnifying the appellee or defendant in error from loss by the delay.    If the bail

or undertaking is sufficient for that purpose, it would seem to answer the intent of the statute.

But if technical exactness is imperatively demanded by the statute, it would necessarily follow that if the undertaking should be for one dollar, or even one cent more than double the amount of the judgment, it would be inoperative to stay execution. But the law has been held to be otherwise. (11 Ill. 419.)

The question is not whether Hibberd could have applied for and obtained a rule upon the appellants, Chipman and Aughenbaugh, to give an undertaking in a larger sum, on pain of allowing execution to issue, but whether he was at liberty to treat it as a nullity, and sue out execution without the action of the Court. If he refrained from issuing execution, it is not doubted that the sureties in the undertaking would be bound, notwithstanding the instrument did not literally conform to the directions of the statute. Certainly, so soon as their obligation became fixed as sureties in the undertaking, to wit: at the time of filing it, the appellee became reciprocally bound to submit to the stay; for so long as he could treat it as a nullity, so could they.

An injunction suspends, but does not defeat a judgment lien. ( *Overton* v. *Perkins*, Mart. & Yerg. 367.) A special injunction takes effect only after a bond has been given. But no one can disregard the injunction because the bond is insufficient, either in amount or otherwise. He must take his rule, that unless a good bond be given by a given day the injunction shall be dissolved.

The undertaking in question was just twice the sum recovered by the plaintiff, without costs, and was evidently intended to conform to the statute.

Hibberd could not have complained that the undertaking was not sufficiently large to afford ample indemnity. The only objection he could have urged would have been, that it was not precisely in double the amount of judgment, including damages and costs.

III. On the twenty-second of November, 1854, Moss obtained a decree of foreclosure and sale of certain mortgaged premises, against Aughenbaugh. There was a sale under the decree July 25th, 1855, and report of sale filed on the thirty-first of the same month.

Drexel, Sather and Church had obtained a similar decree against Aughenbaugh, under which a sale was made July 24th, 1855, and report thereof returned and filed the same day.

The decree of foreclosure, under the old chancery practice, either

operated *in personam*, by foreclosing the mortgagor of his right to redeem, or *in rem*, by directing a sale of the mortgaged land. It did not possess the character or form of a judgment at law, on which execution could at once issue, to be levied of goods and chattels, lands or tenements of the debtor.

To obviate the necessity of suing at law upon the personal obligation for any deficiency which might exist, after exhausting the mortgage security, the revised code of New York provided that the Court should have power to decree payment of the balance of the mortgage debt that may remain after sale of the premises, and to issue the necessary executions therefor against other property of the debtor. (2 Rev. Code, 191, sec. 158.)

It was well settled in New York, that a decree of that character creates no lien; that no lien could exist until the complainant was in a condition to sue out execution, which was after the master's report of sale had been confirmed.

If the Sheriff's report of sale, under the decree, is not required in practice here, to be confirmed or passed upon by the Court, the necessity of filing the report still exists; for until then, the balance unsatisfied, if any, cannot be known, and no execution can issue for such balance. Until that has been done, the decree does not assume the character of a pecuniary judgment at law, and cannot be held to be a lien, either upon principle or authority.

The case was argued and submitted at the January term, 1860. At the July term, in accordance with an order of the Court, it was again argued and submitted.

COPE, J. delivered the opinion of the Court—BALDWIN, J. concurring.

This is an action to quiet the title to certain land in the county of Alameda. The land is divided into three tracts, one of which contains two hundred and twenty-three acres, and the other two, one hundred and eleven acres each. Chapin and Mastick, the plaintiffs, and Hibberd and Freaner, defendants, are the only parties interested in the controversy. Chapin claims to be the owner of the two tracts of one hundred and eleven acres, and Mastick claims the tract of two hundred and twenty-three acres. Hibberd claims all three of the tracts, and the tract of two hundred and twenty-three acres is also claimed by Freaner. The land belonged originally to William W. Chipman and

Gideon Aughenbaugh, and was sold, as their property, under certain judgments recovered against them in the District Court for Alameda county. Under these judgments the present claimants acquired whatever rights they possess, and the questions in the case turn upon their validity and effect.

First in order, is a judgment in favor of Martin C. Briggs and James McGowan, rendered on the twenty-second of August, 1854. This is a judgment for costs, and it is admitted that no memorandum of the costs was delivered within the time limited by the statute. The judgment, as entered in the judgment book, recites this fact, but includes certain fees which had been paid to the officers of the Court; and it is contended that these fees were properly inserted in the judgment. Their insertion was a mere ministerial act of the Clerk, and the validity of this act depends entirely upon the authority for its performance. The recovery of costs is a matter regulated exclusively by statute, and the mode pointed out for that purpose must be strictly pursued. If the provisions upon the subject, in force at the time of the rendition of this judgment, were not complied with, the fees were improperly inserted, and to that extent the judgment cannot be maintained. The Practice Act, as it then stood, provided that the prevailing party should be allowed certain sums, by way of indemnity for his expenses in the action, and that the sums so allowed should be termed costs. (Com. Laws, sec. 494.) For the purpose of recovering the costs, the party was required to deliver to the Clerk of the Court a memorandum of the items; and it was provided that he might include in the costs all necessary disbursements, including the fees of officers allowed by law, the fees of witnesses, expenses in taking depositions by commission or otherwise, the compensation of Referees, and the fees paid on the commencement of the action, or on filing a notice of appeal. The memorandum, accompanied by an affidavit of its correctness, was required to be delivered within twenty-four hours after the rendition of the verdict, and if not so delivered, it was declared that the costs should be deemed waived. (Id. 610, sec. 510.) It was provided that the Clerk should include in the judgment entered up by him, the costs, etc. We do not see how there can be any difference of opinion as to the construction of these provisions. The successful party was allowed certain sums, by way of indemnity for his expenses, and these allowances were denominated costs. No distinction was made between the fees of officers and other expenses, and disbursements of every character were placed

upon the same footing.  The party entitled to costs was required to claim them in a particular manner, and the consequence attached to a failure was, that they should be considered waived.  When properly claimed, it was the duty of the Clerk to include them in the judgment; but until they were claimed, he was vested with no authority for that purpose.  There was no general right of recovery, and the provisions in relation to the delivery of a memorandum were not intended to be directory.  No right was created, apart from the remedy provided for its enforcement, and in respect to this remedy there is no room for construction.  It was expressly declared, that a failure to deliver the memorandum within the time specified, should operate as a waiver of the costs.  Such a failure not only extinguished the remedy, but forfeited the right itself.  It is contended that an objection of this nature is not available in a collateral proceeding; but this view, we think, is incorrect.  The objection goes to the legality of the judgment, and the ground upon which it proceeds is, that the judgment *pro tanto* is a nullity.  If costs are illegally inserted, the act of inserting them is simply void, and there is no reason why this illegality may not be inquired into collaterally.  Under the code of New York, costs are taxed by the Clerk, upon notice to the adverse party, but no time is fixed within which the notice is to be given, and the costs are not waived by a failure to give it.  The Courts hold that the provisions in regard to notice are directory, merely, and that the remedy, when the notice has not been given, is by a motion to retax.  The cases show, however, that the rule would be different if the right to recover depended upon the giving of the notice, and a time were fixed within which the notice must be given.  It has been uniformly held that the insertion of the costs in the judgment did not take away the right to retax, upon motion.

There is another view of this judgment which is equally fatal.  The Clerk had no right to insert the costs after the judgment was entered up and the record completed.  The language of the statute was, that he should include the costs in the judgment, and not that he should enter the judgment and at some subsequent period insert the costs.  His authority terminated with the entry of the judgment, and if by mistake, or otherwise, the costs were omitted, the remedy was by a motion to amend.  The Court alone was competent to grant the relief, and the act of the Clerk was illegal and void.

The title of Chapin rests entirely upon this judgment, and the view

we have taken disposes of the controversy as to him. The costs on appeal were never entered upon the judgment docket, and consequently did not become a lien upon the property until the levy of the execution. The rights of Hibberd had then attached, and his title to the two tracts of one hundred and eleven acres is perfect and complete. Mastick claims under this judgment, and also under a judgment in favor of Drexel, Sather & Church, rendered on the twenty-second of May, 1855. It is proper, before considering the questions in relation to this judgment, to refer to the judgment relied upon by Hibberd. This judgment was rendered on the first of March, 1855, and duly entered upon the judgment docket. An appeal was taken to this Court, but the undertaking filed was in a less sum than that required by the statute to stay proceedings in the Court below. The undertaking was excepted to, but no effort was made to enforce the judgment during the pendency of the appeal. The question is, whether the appeal operated to extend the lien beyond the period of two years from the docketing of the judgment. The Court below held that it did not, and we are of the same opinion. The case of *Dore* v. *Covey* (13 Cal. 502) is not in point. The question there was, whether the insufficiency of the undertaking to stay proceedings was available to the sureties as a ground of defense, and no opinion whatever was expressed upon the question now before the Court. The two questions are entirely different, and we are unable to see in what respect their determination depends upon the same, or even analogous principles. The whole inquiry here would seem to be, whether the party was in a situation to prosecute his judgment to satisfaction, and upon this subject there can be no difference of opinion. He was under no legal disability, and the course which he pursued was a matter of choice, and not of necessity. He might have sued out an execution at any moment, and his mere omission to do so was not sufficient to preserve the lien. In *Dewey* v. *Latson*, (6 Cal. 130) the decision proceeded entirely upon the ground that the filing of a proper undertaking operated as a suspension of the right to enforce the judgment. An undertaking insufficient in amount has no such effect, and if this had been the character of the undertaking in that case, there is no doubt that the decision would have been different. "The obvious intention," said the Court, "was to charge the estate of the judgment debtor, and give the creditor two years to make his money. The statute intended that the time should run from the docketing of the judgment, or the period at which

the plaintiff was in a situation to take out execution, and pursue his remedy to final satisfaction. By the defendant's own act, the force of that judgment has been suspended, and the lien, which is merely an incident, must share a like fate. It would be absurd to say that a lien attached upon a judgment, and expired by its own limitation, while the judgment was still *in fieri*, and could not be prosecuted to full fruition." No objection was made to the sufficiency of the undertaking, and the case turned wholly upon the legal impediment in the way of the plaintiff. The defendant, by complying with the statute, had obtained a stay of proceedings, and the plaintiff was cut off from the privilege of pursuing his remedy pending the appeal. These were the reasons given for the decision, and, in our opinion, they are the only reasons upon which it can be maintained. To apply the same rule in all cases, without reference to the sufficiency of the undertaking, would be to ignore the provisions of the statute.

The result of our conclusion upon this point is, that the claim of Hibberd to the tract of two hundred and twenty-three acres is not maintainable. His rights were acquired subsequently to those of Mastick and Freaner, and the controversy as between them is the only remaining subject of consideration.

The judgment of Drexel, Sather & Church, under which Mastick claims, was for the foreclosure of a mortgage upon other property, situated in the same county. This judgment was in the form usually adopted in such cases. It ascertained the amount due, and directed a sale of the mortgaged premises, and the application of the proceeds to the payment of the debt. It provided for the recovery of any deficiency which might exist, and authorized the issuance of an execution for that purpose. It was docketed on the twenty-second of May, 1855. Freaner claims under a judgment of the same character, rendered on the twenty-fourth of November, 1854, and docketed on the same day. Neither of these judgments was satisfied by a sale of the mortgaged property. Under the former, the sale was made, and a report of the deficiency filed, on the twenty-fourth of July, 1855. Under the latter, the sale was made on the thirty-first of July, 1855, and a report of the deficiency filed on the twenty-fourth of August, 1855. The question is, at what time did the lien of these judgments attach upon the land in controversy. On behalf of Freaner, it is contended that the lien attached at the time of docketing; but it is urged in favor of Mastick, that no lien was acquired until a sale was made, and the deficiency

ascertained.    Section two hundred and forty-six of the Practice Act provides that, " in an action for the foreclosure or satisfaction of a mortgage of real property, or the satisfaction of a lien or incumbrance upon property, real or personal, the Court shall have power, by its judgment, to direct a sale of the property, or any part of it, the application of the proceeds to the payment of the amount due on the mortgage, lien, or incumbrance, with costs, and execution for the balance." We have held, in reference to this section, that in actions of foreclosure its effect was to authorize a personal judgment against the mortgagor, in addition to the relief usually granted in such cases.    (*Rollins* v. *Forbes*, 10 Cal. 299; *Rowland* v. *Leiby*, 14 Id. 156.)    Where such a judgment is rendered, there is no doubt that, when docketed, it becomes a lien in accordance with the statute.    It is obvious, however, that nothing but a judgment establishing a definite personal liability can have this effect.    A mere contingent provision, referring to no particular amount, and in abeyance until the contingency is determined, is not within the meaning of the statute.    It may become a valid and perfect judgment; but until the amount to be recovered is ascertained and fixed, no effect can be given to it as a lien.    In the present case, the provisions in question were of this character, and no general lien was acquired by the docketing of the judgment.    It is no answer to say that the judgments contained a statement of the amount due. There was no personal judgment for this amount, nor was there anything in the nature of a personal judgment, beyond the mere direction for the issuance of an execution, in the event of the insufficiency of the mortgaged property to pay the debt.    The whole matter was contingent, indefinite and uncertain, and so long as this continued to be the case, no effect whatever could be given to it.

There are several other questions alluded to in the briefs of counsel, but they are not of sufficient importance to demand special attention.

We think the conclusion of the Court below was correct, and the judgment is therefore affirmed.

On petition for rehearing, COPE, J. delivered the opinion of the Court—BALDWIN, J. concurring.

The petition for a rehearing in this case must be denied.    So far as Chapin is concerned, it is unnecessary to add anything to what was said in our former opinion.    On behalf of Hibberd, it is earnestly contended that the views expressed by us, in relation to the effect of the

undertaking to stay proceedings, were erroneous.    But we see nothing in the authorities cited to shake our confidence in these views, and we are satisfied that the conclusion arrived at was correct.    It is evident that the judgment might have been enforced, notwithstanding the undertaking, and the very ground upon which the Court proceeded in *Dewey* v. *Latson* is, therefore, wanting.    Of course, the mere fact that no execution was issued pending the appeal, amounts to nothing, and as the undertaking was insufficient to stay proceedings, we do not see that there was any legal necessity for the course pursued.    The undertaking having been excepted to, there is no foundation for the argument upon the ground of acquiescence; nor, indeed, could any presumption of acquiescence arise, for there could be no valid waiver of the proper statutory undertaking, except in writing.    (Pr. Act, sec. 358.)    It is of no consequence that the undertaking was accepted and filed by the Clerk; he had no discretion in the matter, and could not bind the appellee by receiving and filing an undertaking which he had no authority to reject.    In reference to the rights of Freaner, it is only necessary to say, that the errors of fact suggested by counsel are immaterial, and do not affect the merits of the controversy.    Our impression as to the character of the judgment of Drexel, Sather & Church, was derived from the report of the referee, and may have been erroneous. But the limitation upon the lien did not commence to run until the deficiency was ascertained, and an execution could be issued for its recovery, and the legal result is therefore the same.    The judgment of Freaner created no personal liability, except for the payment of the deficiency.

Rehearing denied.