[No. 2104.]

JAMES F. HIBBERD AND WM. A. PIPER v. JOHN SMITH, CHAS. SHORE, H. C. TAPPAN, RUSSEL M. ROGERS AND ELISHA H. ROGERS.

DOCKETING A JUDGMENT.—If, in docketing a judgment, the clerk omits the Christian name of the judgment debtor, or does not write the names in alphabetical order, the omission does not prevent the docketing from performing its function, making the judgment a lien on the real estate of the judgment debtor.

LIEN OF A JUDGMENT.—If a judgment debtor has executed a deed of his real estate before the judgment against him is docketed, but the deed is not delivered until after the judgment is docketed, the lien of the judgment attaches to the same.

LIEN OF JUDGMENT IN FORECLOSURE SUITS.—In an action to enforce a mortgage, if a judgment is entered directing a sale of the mortgaged property, and an application of the proceeds on the amount due, and further declaring that in case of a deficiency, the plaintiff have execution for the balance, the lien of the judgment does not attach to the real estate of the defendant, other than that mortgaged, until after a sale has been made, and a deficiency reported, even if the judgment is docketed when it is first rendered.

EXECUTION.—An execution which is not issued in the name of the People, or directed to the sheriff, is amendable, and, therefore, is not void, but only voidable, and a sale under it is valid.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

Ejectment to recover a tract of land containing about one hundred acres, being portion of the rancho San Antonio, in the county of Alameda. The action was commenced June 29, 1861, and at this time the grant had been confirmed, but the final survey had not been approved. Both parties claimed under W. W. Chipman. Chipman and Aughin-

baugh owned the land, and on the 11th day of November,
1854, Aughinbaugh sold to Chipman. On the 1st day of
March, 1855, the plaintiff Hibberd recovered a judgment
against Chipman and Aughinbaugh for eight thousand six
hundred dollars, and it was docketed on the same day in
the following manner:

| Judgment Debtors. | Judgment Creditors. | Judgment. | Time of Entry. | Where entered in Judgment Book. | Appeal, when Taken. | Judgment of Appellate Court. | Satisfaction of Judgment when Entered. |
|---|---|---|---|---|---|---|---|
| Chipman & Aughinbaugh. | James F. Hibberd | $8600. Costs, $536.35. Restitution of lands. | Mar. 1, 1855. | "A," pages 169–70. | May 17, 1855. | Judgment affirmed. | |

On the 22d day of October, 1856, an execution issued on
the judgment, and the sheriff sold the demanded premises
on the 17th day of November, 1856, and the plaintiff Hibberd became the purchaser, and received a sheriff's deed,
July 7, 1858. Hibberd conveyed an undivided interest in
the premises to the plaintiff Piper. This was the plaintiff's
title.

The defendants claimed title under W. W. Chipman
through Edward S. Chipman. On the 6th day of January,
1855, W. W. Chipman executed a deed of the demanded
premises to Edward S. Chipman, who was not in California,
but resided in the State of Ohio. This deed was recorded
at the request of the grantor, March 15, 1855, but was not
delivered to the grantee until June 30, 1855, at which time
he arrived in this State. W. W. was indebted to Edward
S. when the deed was made, but the latter did not know of
the execution of the same until it was delivered to him.
The defendants were severally in possession of the premises, deraigning title under said Edward S. The defendants offered in evidence the judgment-roll in the case of
H. P. Hepburn v. W. W. Chipman and others. The judgment
was rendered in the District Court of the Third Judicial
District, for the County of Alameda, on the 26th day of

August, 1854, upon a suit brought to foreclose a mortgage
for over eleven thousand dollars given on other property
than the demanded premises.   The judgment was in the
usual form, directing the sale of the mortgaged property,
and then provided "that, in case of insufficiency of said
proceeds to pay said notes and interest and all costs and ex-
penses in this action, and attending said sale, then execu-
tion issue against said Chipman, Morrell and Webster, for
the balance unpaid."   Defendants then introduced in evi-
dence an order of sale issued on the judgment, and the
sheriff's return, which showed that he sold the mortgaged
property on the 23d day of October, 1854, for seven thou-
sand eight hundred dollars, and reported a deficiency of
$8040.84, which return and report were filed November
27, 1854.   The defendants then offered in evidence an ex-
ecution for the deficiency reported by the sheriff, issued
July 1, 1856, and the sheriff's return thereon, which showed
that he received the execution on the day it issued, and on
the same day levied on the demanded premises, and sold
the same on the 30th day of July, 1856, to W. L. Duncan,
for the sum of seven thousand dollars.   The writ and return
were filed September 25, 1856.   In the same connection the
defendants offered in evidence the sheriff's certificate of
sale, and a deed from the sheriff to said Duncan, dated
August 14, 1857, and recorded October 8, 1858, and a deed
from Duncan to Edward S. Chipman, reciting that said
Chipman had purchased and was the owner of the judg-
ment under which Duncan had purchased, and that the
same had been assigned to Duncan in trust for Chipman,
and declaring that Duncan held the property in trust for
Chipman.   This last deed was dated July 7, 1856, and re-
corded November 8, 1856.   The above papers were intro-
duced to show that whatever right Duncan acquired by the
sheriff's sale was vested in Edward S. Chipman.   The
plaintiffs objected to the execution being received in evi-
dence, because it was not issued in the name of the People,
nor directed to the sheriff.   The execution started out as
follows:

"STATE OF CALIFORNIA, ⎱ *ss.*
     County of Alameda. ⎰

'Whereas, a judgment and decree of sale was rendered in the District Court of the Third Judicial District," etc.

It then recited that the sheriff had sold under the order of sale and had reported a deficiency, and then proceeded as follows: "These are therefore to command you, as heretofore you have been commanded, that of the goods and chattels, if sufficient; if not, then of the lands and tenements of the said William W. Chipman, A. J. Morrell, and John N. Webster, you levy and cause to be made," etc. The court sustained the objection, and then ruled out the certificate of sale, sheriff's deed to Duncan, and deed of Duncan to Chipman.

The plaintiffs recovered judgment and the defendants appealed.

The other facts are stated in the opinion.

*Porter & Holladay,* for the Appellants.

*John Currey,* also for the Appellants.

The foreclosure judgment or decree of Hepburn against W. W. Chipman and others, was entered August 26, 1854, and docketed on that day. Under this decree the sheriff sold the mortgaged property for a part only that was due, and afterwards, on the 27th of November, 1854, made his report and return, showing a deficiency still due of $8040.84. This report and return was filed on the day last mentioned. Now the question arises, was this sum of the deficiency still remaining due after the mortgage security was exhausted, a lien on the real property of W. W. Chipman in Alameda County, from and after the date last aforesaid? If it was, then the lands in controversy were incumbered by this lien prior to the date of the Hibberd judgment, and the sale and conveyance of the property to Duncan under the execution issued for the deficiency passed the title of the property to Duncan discharged of the lien of the Hibberd judgment, if such a lien ever existed.

In *Chapin* v. *Broder* (16 Cal. 403), the Court held that the

lien for the deficiency, after the sale of mortgaged premises, attached on the debtor's real property at the time the deficiency was reported and filed.

I have not been able to find a case in our reports which is an authority for saying the deficiency or balance remaining due after the mortgage premises were exhausted, under a foreclosure decree in the old form, need be docketed in order to make the deficiency a lien on the debtor's property; but, on the contrary, the authorities recognize the docketing of the foreclosure decree or judgment as the docketing and the only docketing that was necessary under the statute as it was before the amendment of 1860. The statute at the date of the Hepburn foreclosure decree against W. W. Chipman, did not authorize any docketing of a deficiency or balance in such case. The court, in *Chapin* v. *Broder*, evidently regarded the docketing of the foreclosure decree as the only docketing necessary. Hence the court speak of the judgment as to the deficiency as in abeyance until the contingency of a deficiency be ascertained, and hold that until such deficiency is ascertained and fixed, no effect can be given to it as a lien.

*Theodore H. Hittell,* also for the Appellants.

The Hibberd judgment was not docketed in accordance with law, and therefore did not create any lien. Section 205 of the Practice Act provides what the docket shall consist of, and, among other things, that "the names of the defendants shall be entered in the docket in alphabetical order." There was no compliance with this provision in the case at bar. (*Buchan* v. *Sumner*, 2 Barb. Ch. R. 165.)

The Hepburn judgment and the Duncan deed were valid. The only objection made to the Hepburn sale was that the order of sale did not appear to have been issued in the name of the people, nor directed to the sheriff. The return, however, and subsequent proceedings, show that the sheriff received and acted under it; and, although it may be admitted that the paper referred to—owing perhaps to accident—did not contain the usual formula of title of the

cause and direction, yet it seems to us the order was sufficient as an order of sale. (*Heyman* v. *Babcock*, 30 Cal. 367.)

*C. T. Botts*, also for the Appellants.

The objection to the Hepburn title is that the execution under which the sale to Duncan was made, did not run in the name of the People of the State of California.

An innocent purchaser is not affected by irregularities or errors in proceedings. (*Wood* v. *Jackson*, 8 Wend. 36; *Grignon* v. *Astor*, 2 How. 341.) In *Brewster* v. *Ludekins* (19 Cal. 171), this Court held that a petition addressed to the judge, which under the statute should have been made to the court, was not such an error as affected the jurisdiction. In *Parks* v. *Church and Atwell* (5 How. Pr. Rep.), the court says that the defects alleged against the execution (it neither ran in the name of the people nor was attested as required by the statute) are all amendable. A writ wrongly tested as to the name of the chief justice, is amendable. (*Ross* v. *Luther, Sheriff of Clinton County*, 4 Cowen, 148.)

An irregularity in an execution in respect to the return day therein mentioned, can only be taken advantage of by the defendant in the judgment. If he chooses to waive the irregularity, a third person cannot object to it. (*Berry* v. *Riley*, 2 Barb. 307.)

The sheriff's deed by virtue of a sale of land under an irregular execution, confers title on a purchaser. (*Coleman* v. *Trabue*, 2 Bibb. 518; see *Bacon* v. *Crossey*, 3 Seld. 195; *Parks* v. *Church*, 5 How. Pr. 382.)

*A. M. Crane and J. P. Hoge*, for the Respondents.

The objection that the Hibberd judgment was not docketed in accordance with law, and therefore did not create a lien, surely cannot be made by one having no title.

But there is nothing in the objection. The docket, at least, had the name of " Chipman " as a defendant entered alphabetically, and no mistake could exist as to who was the Chipman meant, because the docket itself refers to the very page of the judgment-book where the judgment was

entered, and turning to this judgment, we find it to be against William W. Chipman.

The Code of New York, Sec. 282, under which the decision quoted by appellant from 2 Barber was made, did not require the docket to set forth or refer to the judgment-book in which the judgment was entered,. and hence the docket was the only means of ascertaining the amount or time of entry of judgment, or against whom rendered.

Not so, however, in this case. Had a person been searching for judgments against William W. Chipman, he would have found it without difficulty.

Whatever the practice in New York may have been, in this State when a judgment is docketed against two or more, it has quite often been done precisely as this was.

The Hepburn judgment never became a lien because not docketed after the deficiency was ascertained. There was no personal judgment in the case. .

*McAllisters & Bergin,* for the Appellants, in reply.

No docketing for a deficiency reported by the sheriff on a mortgage sale was required by the Practice Act until 1860, when the act was amended. In New York no lien could exist until after the complainant could sue out execution, which was after the master's report was filed. The sheriff's report of a deficiency need not be passed on by the court. The Practice Act made no distinction between judgments enforcing mortgages, and those of a different character. All were to be docketed. (*Hobbs* v. *Duff,* 23 Cal. 623.

By the COURT:

1. The judgment in the action of *Hibberd* v. *Chipman and Aughinbaugh* was docketed in such a manner as to constitute a lien on the real property of the defendants therein. The statute required that the names of the defendants should be entered in the docket in alphabetical order. (Pr. Act, Sec. 205.) It was evidently intended that the surnames should precede the Christian names, and the omission of the Christian name of the defendant Chipman did not deprive the docket of its useful function of directing

the attention of those interested to the existence of a judgment, and to all its incidents.

2. As against judgment creditors of W. W. Chipman, his deed to E. S. Chipman was not delivered until after the Hibberd judgment was docketed.

3. Under the practice in chancery—except in cases of strict foreclosure, when the decree deprived the mortgagor of his right to redeem—the decree of foreclosure operated *in rem*, and directed a sale of the mortgaged premises. Such decree did not possess the qualities of a judgment in an action at law, on which execution could issue, to be levied on the general property of the mortgagor. But, by section 246 of the Practice Act of 1851, it was provided: "In an action for the foreclosure or satisfaction of a mortgage of real property, etc., the court shall have power by its judgment to direct a sale of the property, or any part of it; the application of the proceeds to the payment of the amount due on the mortgage, etc., with costs, and execution for the balance."

In entering the judgment in *Hepburn* v. *Chipman*, the form was adopted which is provided for in the statute just quoted.

This judgment is substantially like those of Drexel, Sather & Church, and Freaner, as the judgments in those two cases were assumed to be in the original opinion of the Supreme Court in *Chapin* v. *Broder* (16 Cal. 403). There the court declared (p. 421) the question to be, at what time did the lien of such a judgment attach: when it was docketed, or when a deficiency was ascertained by the return of the sheriff after sale? After saying that the court had previously held that the statute authorized a personal judgment against the mortgagor, and that in case of such personal judgment its docket would make it a lien, the opinion in *Chapin* v. *Broder* proceeds: "It is obvious, however, that nothing but a judgment establishing a definite personal liability can have this effect. A mere contingent provision, referring to no particular amount, and in abeyance until the contingency is determined, is not within the meaning of the statute. It may become a valid and perfect judg-

ment; but until the amount to be recovered is ascertained and fixed, no effect can be given to it as a lien." The original opinion in *Chapin* v. *Broder* determined that cause on the proposition, that, inasmuch as in the case of Drexel, Sather & Church, the report of deficiency was filed before the like report was filed in the Freaner case, the former acquired the older lien, notwithstanding the fact that Freaner's judgment was first docketed.

It is true, that in the opinion delivered on the petition for a rehearing, it seems to be admitted that the court had received from the report of the referee an erroneous impression in respect to the character of the judgment of Drexel, Sather & Church. But it is there reasserted that the judgment of Freaner created no personal liability, except for the payment of the deficiency; and the result is, that what was said in the original opinion in respect to the time when the lien would attach in case of such judgment, was left undisturbed by the opinion delivered on the petition for rehearing.

It is also true that in the opinion last mentioned, it is intimated that even in case of judgment against the mortgagor personally, the limitation on the lien would not commence until the deficiency was ascertained. But this has been overruled in *Englund* v. *Lewis* (25 Cal. 350), and in other cases.

We see no reason for departing from the rule, as laid down in *Chapin* v. *Broder*, and, therefore, hold that on the return of deficiency in the action of *Hepburn* v. *Chipman*, a lien attached on all the real property of the defendant therein within the county.

4. The execution offered by defendants, although irregular, and defective in form, was amendable and not void. The court below, therefore, erred in sustaining plaintiff's objections. That this error injured the defendants, sufficiently appears from what has been said in regard to the lien of the Hepburn judgment.

5. If, as has been suggested in argument, the rights of Hibberd and Duncan, under the latter of whom defendants deraign, were adjudicated in a former action, the proof of

such former adjudication can probably be made by way of rebuttal when this cause shall be retried in the court below. The fact does not appear from the record before us, and cannot now be considered.

Judgment and order reversed and cause remanded for new trial.

CROCKETT, J., dissenting:

I concur in the opinion of a majority of the court, except on the third proposition discussed. On that point I dissent, and also from the judgment.

Mr. Chief Justice WALLACE, having been of counsel in this cause in the court below, did not participate in its decision here.