## DEWEY *v.* LATSON *et al.*

An appeal from a judgment suspends the lien, which is merely an incident; and the statutatory limitation of the lien commences to run only from the date of the *remittitur* from the appellate Court.

APPEAL from the District Court of the Sixth Judicial District.

The plaintiff filed his bill of foreclosure February 12, 1855, against A. C. Latson, making E. Townsend, J. W. Winans and John G. Hyer parties, as claiming an interest in the property. The question upon which the case is appealed, is as to the priority of plaintiff's lien over a judgment, obtained by one Wingate against Latson, and assigned to the defendant, Hyer.

The mortgage to the plaintiff was executed September 19, 1853. The judgment of Wingate was obtained January 9, 1852, from which an appeal was taken February 23, 1852. On the 6th of June, 1853, the judgment was affirmed by the Supreme Court, with ten per cent. damages and costs, and the remittitur was sent down on the 21st of the same month, and on that day a minute of the judgment of the Supreme

Court was entered on the judgment docket of the District Court, against the original entry.

The plaintiff contended that the lien of the judgment had expired by limitation before the commencement of this suit.

There are many other facts found and points raised on the record, which are not material to the decision of the Court.

*Robinson, Beatty & Botts* for Appellant.

It will be seen that this case presents for the consideration of this Court a single question as to the effect of the stay of proceedings, in prolonging the statutory existence of the judgment lien.

The statute, see section 204 of the Practice Act, which creates the lien, expressly limits its existence to two years.

To enable the Court below to uphold this lien, (the two years, reckoning from the period of docketing, having expired in January, 1854, several months prior to the institution of the foreclosure suit,) it was necessary to hold that the running of the limitation was suspended by the pendency of the appeal, and the consequent stay of proceedings.

It is pretended that an equitable construction of the statute justifies this position. It is said that the object of the Legislature was clearly to afford the judgment creditor two years to enforce his lien; and that object can only be effected by a construction which extends the time by the addition of the period during which the legal disability exists.

It seems to us very unphilosophical to call such a decision a *construction* of the statute; it would be much more proper to call it an interpolation upon the statute.

Under this pretence of construction, Courts have unquestionably been frequently guilty of judicial legislation; and it was partly with an eye to this great evil that the provision was introduced into our Constitution, which forbids the entrenchment of the one department upon the functions of the other.

We admit that it is the duty of the Court so to construe the statute, as to carry out in spirit the manifest object of the Legislature. But how is this object to be gathered, except from the words of the statute itself? Here is a general limitation to the existence of this lien —there is no exception. The Court is asked to create one in favor of a party who is under a legal disability in enforcing his lien. This is at best, to supply defective legislation. Suppose a judgment should be enjoined, and the injunction afterwards dissolved; shall this disability create another exception? Necessarily, it comes within the same principle. How many other exceptions will the Court be asked to make where the statute has made none? If it be said that the terms of the statute, giving two years for the enforcement of the lien, are general, and give it to every judgment creditor, the answer is, that the limitation is as general, and must operate as universally. Every judgment creditor has two years in which to enforce his lien, except those who come under the disabling provisions of the other statutes.

To except from the operation of this limitation, those whose proceed-

ings are stayed by law, is clearly a distinct substantive proposition, certainly not included in the words of the statute, nor necessarily in the policy of the law. Such an amendment, if proposed to-morrow, would probably elicit much debate, and divide the friends of the law as it now stands upon the statute book.

It might be urged that the policy of the law, which favors the alienation of property, forbids the tying up real estate for a longer period than two years. That even if, as it now stands, the party placed under the legal disability, is substantially denied the benefit of the lien, that he is at least secured by a bond, and that at any rate the individual exception must yield to the general policy.

To give the respondent three years, instead of two, in which to enforce his lien, is no part of the statute, but is an exception to the general principle there laid down, which it is beyond the province of this Court to engraft upon it.

It is argued that it is a hard case to permit the judgment debtor to deprive the creditor of his lien. Let us not forget that wise old saying of one of the English Judges, that "hard cases are the quicksands of the law." The rule laid down in a hard case becomes the precedent in every other case, and if the decision of the Court below is upheld by this Court, the case of Dewey v. Latson may be cited as authority for any judicial legislation that may be desired.

Luckily we are not without authority, and that of a very high character, upon this very point. In Robinson v. Alford, 13 Smede & Marshall's, 509, the question arose, whether an injunction which disabled the party from proceeding would stay the running of the Statute of Limitations. The Court decided that it would not, and Judge Sharkey remarks that "the statute should not be so construed as to defeat the object intended, by creating exceptions in cases supposed to be analagous in principle to those expressly excepted. To do so, would be to undertake to supply defective legislation, by engrafting new provisions on the statutes. Cases not excepted by the Legislature, cannot be excepted by the Courts." These are the very words of one of the ablest and most distinguished jurists in America.

In Kirkpatrick v. Byrne, 3 Cush. Miss. R., p. 582, this opinion is quoted with great approbation.

`That case turned upon the construction of an Act similar to our own.

The statute of Mississippi limits the lien to two years from the passage of the Act, and as in ours, there is no exception in favor of creditors lying under the disability of a stay of proceedings.

The Court was asked to make such an exception. It was urged there, as here, that it was unjust that the very party who created the disability should seek to avail himself of it.

The Court in answer to this view, say: "We concede the force of this position, and readily acknowledge that it presents a case which ought to have been exempted from the operation of the statute; but the statute on the subject is general—it has made no exception, and if

Dewey v. Latson.

we were to make an innovation upon it in this case, it would be a precedent for making an exception of every case that might hereafter arise, which, in the opinion of the Court, in equity, should be excepted."

In this case, there had been a levy before the stay by injunction, and the Court thought that the dissolution of the injunction ought to restore the levy; but as to its effect upon the limitation of the lien, they had no doubt.

It is to be remembered that in New York the Statute of Limitations was amended so as to except all persons lying under the disability of stay of proceedings, the very amendment that this Court is requested to enact.

But a case came up under the statute, as it stood before the amendment. See Barker v. Millard, 16 Wendell, 572.

Judge Bronson disposes of it, by reciting the general words of the statute, and the exceptions, and stating, that however reasonable the exceptions might have been, it had not then been made by the Legislature.

*Winans* for Respondent.

The case cited from Mississippi is not analogous to the present case. That case holds that although an injunction suspends the lien of a judgment, yet the lien of the judgment is not extended on that account.

But an injunction is an independent writ, issuing out of the equitable jurisdiction of the Court, only granted upon a proper showing of its justice, and entirely independent of the proceedings connected with the judgment itself. Moreover, the Court can at any time modify or discharge it, so as to protect the judgment lien from running out before its enforcement. But the taking of an appeal in the case, is a proceeding directly connected with the judgment, and can be protracted so as to prevent the judgment from becoming a lien at all, unless it be a lien after the appeal is decided.

The object of the statute, which is to give a two years' lien, would be entirely frustrated, if the appeal (which is a right of the adverse party in all cases) could defeat it.

On the other hand, the object of the statute would not be defeated by the interposition of an injunction, because that is an outside collateral proceeding, growing out of another branch of jurisdiction, and only grantable where the particular equities of the case are such that the spirit of the statute is not evaded or defeated.

The opinion of the Court was delivered by Mr. Chief Justice MURRAY. Mr. Justice TERRY concurred.

Section 204 of the Practice Act provides, that immediately after filing the judgment roll, the clerk shall make the proper entries of the judgment, and from the time it is docketed it shall be a lien for two years.

In this case, the plaintiff appealed upon the rendition of the judgment in the Court below, and the single question is presented, whether,

in such cases, the statute commences running from the docketing of the judgment in the Court below, or from the date of the remittitur from this Court.

The first reading of the Act would seem to be conclusive in favor of the appellant, but when we come to examine the legal solecism of allowing a party, by his own motion, thus to defeat the remedy which the law has given the creditor, and to destroy the security furnished, which must inevitably result, if the construction contended for be sustained, we are necessarily put upon inquiry as to the intention of the Legislature and the possibility of escape from any such absurd consequences.

The obvious intention was to charge the estate of the judgment debtor, and to give the creditor two years to make his money. The statute intended that this time should run from date of the judgment, or period at which the plaintiff was in a situation to take out execution, and pursue his remedy to final satisfaction. By the defendant's own act, the force of that judgment has been suspended, and the lien, which is merely an incident, must share a like fate. It would be absurd to say that a lien attached upon a judgment, and expired by its own limitation, while the judgment was still *in fieri*, and could not be prosecuted to full fruition.

The defendant would thus be able to abridge, if not destroy, the lien, and in all cases where a period of more than two years intervened between the date of the judgment in the Court below and the final judgment in this Court, to substitute personal for that security which the law gives the successful party.

It was never intended that a party, by prosecuting a frivolous appeal, should thus be allowed to take advantage of his own wrong.

Judgment affirmed.