# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT,

## JULY TERM, 1864.

---

## HERMAN ENGLUND *v.* JOSEPH E. N. LEWIS, AND HERNDON BARRETT.

LIEN OF JUDGMENT PENDING APPEAL.—Where an appeal has been taken, and a bond sufficient to stay proceedings upon the judgment pending the appeal has been given, the lien of the judgment upon the real estate of the judgment debtor in the county where the same was docketed, owned by him at the date of the docketing of the judgment, or subsequently acquired, until the lien expires, remains a valid and subsisting lien until the end of two years from and after the date of the remittitur from the Supreme Court.

JUDGMENT IN FORECLOSURE CASES.—In foreclosure cases, a formal judgment *in personam* may be rendered against the defendant for the amount found due, with a provision for its enforcement against the property upon which the lien is established, or a judgment may be rendered in accordance with the old chancery practice, enforcing the lien and directing a sale of the property upon which it is established.

STAY OF PROCEEDINGS ON APPEAL.—If, in foreclosure cases, a judgment *in personam* is rendered against the defendants, and also one enforcing the lien, and an appeal is taken from the whole judgment in order to stay proceedings upon the whole judgment, the appellant must give an undertaking for costs, one in double the amount of the personal judgment, and one for the payment of waste and such deficiency as may remain due after the sale of the property, and all these undertakings may be in one instrument, or several, at the option of the appellant.

43

Englund *v.* Lewis *et al.*

SAME.—In such cases, if the undertaking is given only for costs, and waste and deficiency, an execution on the personal judgment is not stayed pending the appeal; and if the undertaking is given only for costs and double the amount of the personal judgment, an execution for the sale of the property upon which the lien is foreclosed is not stayed pending the appeal.

FORM OF UNDERTAKING ON APPEAL.—When the judgment is for the enforcement of a lien and a sale of the property, the undertaking to stay a sale of the property pending the appeal need not provide for the payment of the value of the use and occupation of the premises.

SAME.—In a case where the judgment directs a sale of real property, the undertaking on appeal, in order to stay a sale, need only provide security against waste, unless there is a provision in the judgment for the payment of a deficiency, in which case it must provide for the payment of such deficiency.

SAME.—When the judgment directs a sale for the purpose of satisfying any lien other than a mortgage lien, the undertaking on appeal, to stay a sale, need not provide for the payment of any deficiency which the judgment may direct to be paid.

WHEN LIEN OF JUDGMENT EXPIRES.—In foreclosure cases, where there is a judgment *in personam*, and also a judgment enforcing a lien and directing a sale of the property, and the undertaking on appeal only stays the sale and provides for costs, the lien of the personal judgment on the judgment debtor's property, in the county where it is docketed, attaches at the time it is docketed, and expires at the end of two years from the time the personal judgment is docketed.

CLOUD ON TITLE.—A sale by a Sheriff of real estate upon an execution against the grantor will, even if not effectual to pass the title to the purchaser, create a doubt as to the validity of the grantee's title, and cast a cloud upon it, and the grantee can maintain an action to enjoin the sale.

DECREE FOR SALE OF PROPERTY NOT A JUDGMENT LIEN.—In foreclosure cases, if the plaintiff does not obtain a personal judgment against the defendant, but contents himself with a decree enforcing the lien, and directing a sale of the property, such decree does not become a judgment-lien on the other property of the judgment debtor until after a sale has been had and the deficiency, if there be one, ascertained and docketed, and then only for the amount of such deficiency.

EXECUTION ON PERSONAL JUDGMENT AND SALE UNDER DECREE.—In foreclosure cases, where there is a personal judgment rendered against the defendant, and also a decree in equity awarded, the plaintiff may either issue an execution upon his personal judgment or enforce his decree by a sale of the property, but he cannot do both at the same time, and if he issue execution on the personal judgment first, the money realized on it must apply on the judgment and a sale of the property under the decree afterwards made for the balance, and so *vice versa.*

APPEAL from the District Court, Tenth Judicial District, Yuba County.

The facts are stated in the opinion of the Court.

*Hatch & McQuaid*, for Appellant.

The lien of the Lewis judgment expired on the 14th of May,

1863, two years from the date of its being docketed, and could not be extended by appeal. The case of *Dewey* v. *Latson*, 6 Cal. 130, is not law. (Practice Act, sec. 204; *Isaacs* v. *Swift*, 10 Cal. 82; *Chapin* v. *Broder*, 16 Cal. 404; *Castro* v. *Ellis*, 13 Texas, 229.)

The appeal taken by Covillaud and Nye to the Supreme Court from the judgment recovered by Lewis against them in the District Court, did not stay the execution of the money judgment. The undertaking on appeal was insufficient for such a purpose, and only had the effect to stay the decree of the Court directing a sale of the particular property mentioned therein. (Practice Act, secs. 209, 349, 352.)

The money judgment of Lewis alone became a lien upon the real property of the judgment debtors, Covillaud and Nye. The undertaking on appeal being insufficient in amount, under section three hundred and fifty-two, Practice Act, to stay execution thereupon, the lien of the judgment was not extended by the appeal beyond two years from the time of its docketing; and more than two years having elapsed after the docketing of the judgment and before issuance of execution, the judgment ceased to be a lien upon the real property of the judgment debtors, Covillaud and Nye. (Practice Act, sec. 204; *Chapin* v. *Broder*, 16 Cal. 404; *Isaacs* v. *Swift*, 10 Cal. 71.)

*W. C. Belcher* and *Charles E. Filkins*, also for Appellant.

The case of *Dewey* v. *Latson*, 6 Cal. 130, is not law, and cannot be sustained by reason or authority.

The authority of that case has been directly or indirectly questioned in several later cases, and has never, in any case, been affirmed.

In *Isaacs* v. *Swift*, 10 Cal. 71, which was a closely contested and well considered case, decided by a full bench, the Court say : "As the question does not arise in this case, we express no opinion as to whether, in case the sale be prevented by injunction, or other legal impediment, the lien of the judgment must expire at the end of the two years." The case of *Dewey*

v. *Latson* had been specially called to the attention of the Court by counsel, yet it is apparent 'that the Court did not approve, and if the question had been before them, would have over-ruled it. All the Judges joined in the decision of this case, Mr. Justice Burnett delivering the opinion, and Mr. Justice Field and Mr. Chief Justice Terry, (who had concurred in *Dewey* v. *Latson*,) concurring.

In *Chapin* v. *Broder*, 16 Cal. 403, the authority of *Dewey* v. *Latson* was still further limited. It was there decided that execution is not stayed and the lien not extended, where the appeal bond is not in double the amount of the money judgment, including costs; and that it does not matter that the defendant intended the bond given to operate a stay, and both parties supposed it did so operate.

The language of the statute is plain and apparently unambiguous. It declares that "from the time the judgment is docketed, it shall become a lien upon all the real property of the judgment debtor, not exempt from execution, in the county, owned by him at the time, or which he may afterwards acquire, until the said lien expires. The lien shall continue for two years, unless the judgment be previously satisfied." Certainly there is no patent ambiguity about the language used. It is true that the rule is well established that the intention of the Legislature must always control in the construction and interpretation of statutes, but it is equally well settled that when the language of a law is plain and unambiguous, whether expressed in general or more limited terms, there is no room left for construction, and a resort to extrinsic circumstances is not permitted.

*Expressio unius est exclusio alterius.* The fixing the time during which the lien shall continue is the exclusion of all other times, and is just as distinct and clear a limitation as if the words of the statute had been: The lien shall cease and determine in two years from the date of its docketing, or shall continue two years from the date of its docketing, and no longer.

If the decision in *Dewey* v. *Latson*, as limited and controlled

by *Chapin* v. *Broder* and *Isaacs* v. *Swift*, is a correct exposition of the law, still, we say, the case presented by the respondent is not within that decision.

Respondent had a money demand against Covillaud and Nye, and, as he supposed, a vendor's lien upon certain real property to secure its payment, and he sued to recover a judgment for the money, and a decree foreclosing his lien and subjecting the real property to sale for its payment. The District Court gave him just what he asked, a complete money judgment for the sum of four thousand one hundred and sixty dollars and fifty cents, besides costs, and a decree foreclosing his supposed lien and directing a sale of the property, in the event that the money judgment was not paid within twenty days from the date of its rendition. The judgment and the decree were each complete in itself, and were just as separate and distinct as though they had been rendered in distinct Courts as under the old practice. Under that practice, it is well settled that the mortgagee may, at his election, sue at law upon his bond or note, or in ejectment for possession of the property, or in equity, to foreclose his mortgage and sell the property; and his remedies being concurrent, that he may pursue them all at the same time. Lord Mansfield said, in *Burnell* v. *Martin*, Doug. 417, that it had been "settled over and over again, that a person in such a case is at liberty to pursue all his remedies at once." (2 Hilliard on Mortgages, 83–5.)

Under our system, law and equity jurisdiction are in the same Court, and it is well settled here that under the law as it stood when the judgment in controversy was rendered, the mortgagee might have, in the same action, his judgment *in personam* at law and his decree *in rem.* in equity; and it would follow, as a matter of course, under section two hundred and nine of the Practice Act, that he could have execution for the enforcement of his judgment at any time within its life, unless the same were stayed by operation of law or the commands of a Court having competent jurisdiction. He could, also, unless restrained, at any time after the entry of his decree

proceed to enforce it by a sale of the specific property, and though he could collect his debt but once, he might have his execution and his order of sale at the same time. (*Rollins* v. *Forbes*, 10 Cal. 299; *Rowland* v. *Leiby*, 14 Cal. 156; *Chapin* v. *Broder*, 16 Cal. 422.)  And, it would seem that under section two hundred and forty-five of the Practice Act, as amended in eighteen hundred and sixty and eighteen hundred and sixty-one, (Statutes of 1861, p. 306,) the plaintiff is still entitled to have his judgment as well as his decree, though by that amendment he must exhaust the mortgaged property before his judgment can become a lien or he can have execution thereon. (*Cormerais* v. *Genella*, 22 Cal. 116.)

The statute regulating appeals defines with great particularity what he must do. He must give an undertaking for costs in all cases, to render his appeal effectual for any purpose. (Sec. 348.)  If his appeal be from a money judgment, he must give an undertaking in double the amount of the judgment and costs, or it will not stay execution. (Sec. 349.) If his appeal be from a decree directing the sale of mortgaged property, he must give an undertaking in a sum to be fixed by the Judge, that he will not commit waste, for the use and occupation, and for the payment of any deficiency, or the sale will not be stayed. (Sec. 352.)  The language of the statute is plain and imperative, and its requirements must be strictly complied with. Intention to comply will not avail.  In the case of a money judgment, if the amount of the undertaking be insufficient, though the party giving it may intend to make it sufficient, and both parties may believe it to be so, and act upon their belief, it will not operate a stay and cannot prolong the life of a judgment lien. (*Chapin* v. *Broder*, 16 Cal. 403.)

*Jos. E. N. Lewis* and *J. O. Goodwin*, for Respondents.

The appellants, as to the fourth point, say: " The lien of the Lewis judgment expired on the 14th of May, 1862, two years from the date of its being docketed, and could not be extended by appeal.  The case of *Dewey* v. *Latson*, 6 Cal.

130, is not law. (Practice Act, Sec. 204; *Chapin* v. *Broder*, 16 Cal. 104; *Isaacs* v. *Swift*, 10 Cal. 82; *Castro* v. *Ellis*, 13 Texas, 229.)" In this State there is "but one form of civil action for the enforcement or protection of private rights, and the redress or prevention of private wrongs." (Practice Act, Sec. 1.) " A judgment is the final determination of the rights of the parties to that action or proceeding, and may be entered in term or vacation." (Practice Act, Sec. 144.) Under the two hundred and forty-sixth section of the Practice Act as it stood before the Act was amended in eighteen hundred and sixty, " in an action for the foreclosure or satisfaction of a mortgage of real property, or the satisfaction of a lien or incumbrance upon property real or personal," the Court could render judgment for the amount found due upon the personal obligation, and by its judgment direct a sale of the property, or any part of it, and the application of the proceeds to the payment of the amount due on the mortgage, lien, or incumbrance, with costs and execution for the balance. (*Rollins* v. *Forbes and Wife*, 10 Cal. 299; *Rowe* v. *Table Mountain Water Co.*, 10 Cal. 44; *Rowland* v. *Leiby*, 14 Cal. 156; *Cormerais* v. *Genella*, 22 Cal. 116; *Chapin* v. *Broder*, 16 Cal. 422.) In all such actions, a judgment so rendered, when docketed, becomes a lien upon all real property owned at that time by defendants, or either of them, in the county, or that may be acquired by them in the county where such judgment is docketed. (See authorities last quoted.)

It is conceded by appellants, on agreement, that it is a judgment of such a character as, when docketed, would be a lien on real property in the county. We therefore submit, that the judgment in the case of *Lewis* v. *Covillaud and Nye* became and was, on the 14th day of May, 1860, the day it was docketed, a lien upon all real property then owned by them or either of them, or that they or either of them might acquire thereafter, within the lifetime of the judgment, in that county. The appellants contend that that judgment lien had expired by limitation; and to reach that conclusion, have argued at great length two propositions:

1st. Can the lien of a judgment be extended by appeal?

2d. If it can, was the lien of the judgment in *Lewis* v. *Covillaud and Nye* extended by the appeal in that case, or otherwise?

In discussing the first proposition, we shall assume that the appeal in the case of *Lewis* v. *Covillaud and Nye* stayed execution. If the execution was stayed, the Supreme Court of this State, in the case of *Dewey* v. *Latson*, 6 Cal. 130, has answered the appellants' proposition in the affirmative. The appellants contend that if the judgment by the appeal was stayed as to property ordered to be sold, it did not stay execution for the moneyed demand. That the undertaking not being in double the amount of the moneyed demand, Lewis could have ignored the order of sale and proceeded by execution. If to stay execution in such a case it be necessary to give an undertaking in double the amount of the moneyed demand, as contradistinguished from the undertaking required by section five hundred and fifty-two, it would equally require the giving of a second three hundred dollar undertaking for costs. To carry out appellant's proposition, predicated upon his theory that Lewis had two separate and distinct judgments that were in nowise dependent upon each other, it would require four undertakings on appeal to stay execution. There would be the three hundred dollar undertaking for costs on the foreclosure judgment, and the undertaking required by section five hundred and fifty-two to stay the decretal order. There would then have to be a second three hundred dollar undertaking for costs on the moneyed judgment, and then one in double the amount of the moneyed demand. A construction followed to its logical conclusion, that leads to such a complex system of bonds, cannot be the true one as against a more simple and equally effective one. The appellants seem to have forgotten that in this State we have but "one form of action," and that in that action the Court by its final judgment can grant legal and equitable relief as the facts in that action warrant. As there is but one action, whether it be for legal or equitable relief, or both, there can be but one final

judgment in favor of any one party as against the other. In the language of the Act, "a judgment is the final determination of the rights of the parties in the action or proceeding." It includes equitable as well as legal rights; and the Court may grant, except in case of default, "any relief consistent with the case made by the complaint and embraced within the issue." (Practice Act, section 117.)

Section two hundred and forty-six of the Practice Act, under which the Court rendered judgment in the case of *Lewis* v. *Covillaud and Nye*, reads: "In all actions for the foreclosure of or satisfaction of a mortgage of real property, or the satisfaction of a lien or incumbrance upon property real or personal, the Court shall have power by its judgment to direct the sale of the property or any part of it, the application of the proceeds to the payment of the amount due on the mortgage, lien or incumbrance, with costs, and *execution for the balance.*" (Wood's Dig. p. 200, Art. 980.) Under that section we submit, that a judgment creditor could not proceed to enforce his judgment by execution upon an action indicated by that section, until the encumbered premises had been sold. In all such cases it matters not whether the judgment was as in *Rollins* v. *Forbes*, or as in *Moss* v. *Flint et als.*, upon which the Freaner claim was predicated in the *Chapin* v. *Broder* case. Execution, by the terms of that Act, would be stayed until the sale of the property upon which the lien was established. The statute states when an execution may issue on such a judgment, and by implication denies the right to enforce the judgment by execution at any other time. *Expressio unius est exclusio alterius.* (*Zander* v. *Coe*, 5 Cal.) Appellants admit that the appeal stayed the sale of the premises; and if our construction of the Act be correct, it follows that execution for the moneyed demand was stayed until the legal impediment was removed by sale or otherwise.

44

By the Court, SANDERSON, C. J.

This action was brought to enjoin a Sheriff's sale of a certain house and lot upon which the defendant Lewis claimed a judgment lien by virtue of the two hundred and fourth section of the Practice Act. The facts disclosed by the record are substantially as follows : Lewis commenced an action in the District Court of Yuba County against Covillaud and Nye in 1859 to recover judgment against them for an amount of money claimed to be due to him, and also to enforce a vendor's lien upon certain real estate in the City of Marysville belonging to Covillaud, and to obtain an order of sale thereof to satisfy the judgment that he might recover. On the 9th of May, 1860, he recovered judgment for four thousand three hundred and twenty-three dollars and five cents, and also obtained a decree foreclosing his vendor's lien and directing the sale of the real estate for the satisfaction of the judgment. This judgment was docketed on the 14th of May, 1860. Within the statute time Covillaud and Nye filed and gave notice of motion, and filed their statement, for a new trial. Afterwards, on the 17th of November, 1860, their motion for a new trial was overruled by the Court. Covillaud and Nye, within the statute time, gave notice of appeal to the Supreme Court from the judgment against them, and from the order overruling their motion for a new trial. They also, in proper time, executed and filed their undertaking on appeal, having first applied to the Judge of the Court for and obtained an order, under section three hundred and fifty-two of the Practice Act, fixing the amount of the undertaking at two thousand dollars, to stay waste and secure the value of the use and occupation of the premises ordered to be sold, and to pay any deficiency remaining unpaid upon said judgment, etc. The appeal thus perfected was passed upon by the Supreme Court on the 20th of December, 1862. The Court affirmed the money judgment, but reversed the order of sale or so much of the judgment as established a vendor's lien and directed a sale of the real estate. (*Lewis* v. *Covillaud*, 21 Cal. 178.)

The remittitur from the Supreme Court was filed in the Court below by Lewis on the 9th of January, 1863, when the judgment in that Court was modified so as to conform to the judgment of the Supreme Court. On the 20th of February, 1863, execution was issued upon the judgment so modified, and was afterwards levied upon the house and lot described in the complaint and belonging to the plaintiff, Englund.

At the time of the docketing of the Lewis judgment, on the 14th of May, 1860, neither Covillaud nor Nye, the judgment debtors, had any interest in this house and lot. One Levy was the owner of the premises. Nye purchased them of Levy on the 11th of June, 1861, more than a year after the docketing of Lewis' judgment. At the time he purchased, Nye was a married man and the head of a family. He had no residence of his own ; he took possession of the premises, with his family, some ten or twelve days after he purchased, and as soon as he could get possession. Nye continued to reside upon the premises until the 23d of August, 1861, when he and his wife filed their declaration claiming the premises as a homestead. From that time Nye and family continued to reside upon the premises until the 19th of July, 1862, when, for a consideration of two thousand dollars, they conveyed the same to plaintiff, who took the possession thereof.

At the time this action was commenced a temporary injunction was granted, which was dissolved on the final trial, the Court below holding that the judgment in *Lewis* v. *Covillaud and Nye* was a valid and subsisting lien under the two hundred and fourth section of the Practice Act, upon the house and lot of the plaintiff at the time of the issuing and levy of the execution thereon, and that the defendant Lewis had a right to sell the premises to satisfy his judgment. From that judgment the plaintiff appeals.

Before entering upon the discussion of the various questions involved in this case it is important that the nature and character of the judgment which was rendered in *Lewis* v. *Covillaud and Nye* should be definitely settled. That judgment was rendered and docketed prior to the amendments of the two hun-

dred and forty-sixth section of the Practice Act in 1860 and 1861, and its character and legal effect in all respects must be determined by the law as it stood prior to that time. The judgment, after the usual recitals, provides as follows: "The Court, being sufficiently advised in the premises, orders, adjudges and decrees that said plaintiff do have and recover from said defendants the sum of three thousand two hundred and five dollars, with interest thereon from the 12th day of February, 1859, amounting in the agregate to the sum of four thousand one hundred and sixty dollars and fifty cents, and that said sum draw interest from the date thereof at the rate of two per cent per month until paid; and also for the sum of one hundred and fifty-two dollars and twenty-five cents costs, to be taxed in this action, including the sum of ten dollars and thirty cents costs taxed in the Burlingame suit.

"It is therefore ordered, adjudged and decreed that judgment be and the same is hereby rendered and entered up in favor of the plaintiff, Joseph E. N. Lewis, and against the defendants, Charles Covillaud and M. C. Nye, for the sum of four thousand one hundred and sixty dollars and fifty cents, and that said sum draw interest from the date thereof until paid at the rate of two per cent per month, and for the further sum of one hundred and sixty-two dollars and twenty-five cents, costs of suit," etc. The judgment then proceeds in the form of a decree in equity, under the old chancery practice, establishing a vendor's lien and providing for its enforcement in the usual manner.

Under our system of practice there is but one form of action "for the enforcement or protection of private rights, and the redress or prevention of private wrongs," and in a proper case legal and equitable relief may be had in the same action. The result in such cases is a judgment with a twofold aspect, one looking to the legal and the other to the equitable relief. Hence it has been held that in foreclosure cases a formal judgment *in personam* may be rendered against the defendants for the amount found due, with a provision for its enforcement against the property upon which the lien is established.

(*Rollins* v. *Forbes*, 10 Cal. 299; *Rowland* v. *Leiby*, 14 Cal. 156; *Chapin* v. *Broder*, 16 Cal. 422.) In *Rowland* v. *Leiby*, Mr. Chief Justice Field said: "In this State parties are at liberty to adopt in the foreclosure of mortgages the course pursued under the old chancery system, and take a decree adjudging the amount due upon the personal obligation of the mortgagor, and directing a sale of the premises and the application of the proceeds to its payment, and apply, after the sale, for the ascertainment of any deficiency, and execution for the same; or they may take a formal judgment for the amount due in the first instance. In the latter case the proceeds can be applied by the officer making the sale immediately upon the judgment, and no further proceedings will be necessary on the part of the Court to ascertain the deficiency."

The appellant contends that the judgment under consideration is in accordance with the latter form above described, and the respondents contend that it is in accordance with the former. Counsel for respondents seem to overlook one of the consequences of their theory, which would, if their theory is to prevail, prove fatal to their case.

The respondents seek to establish a lien under the judgment in question. If the judgment has the form which they claim for it, the docketing thereof created no lien, according to the rule in *Chapin* v. *Broder*. In that case the Court said: "We have held in reference to this section (246 of the Practice Act) that in actions of foreclosure its effect was to authorize a personal judgment against the mortgagor, in addition to the relief usually granted in such cases. Where such a judgment is rendered, there is no doubt that when docketed it becomes a lien in accordance with the statute. It is obvious, however, that nothing but a judgment establishing a definite personal liability can have this effect. A mere contingent provision, referring to no particular amount, and in abeyance until the contingency is determined, is not within the meaning of the statute. It may become a valid and perfect judgment, but until the amount to be recovered is ascertained and fixed no effect can be given to it as a lien.

Englund *v.* Lewis *et al.*

"In the present case, the provisions in question were of this character, and no general lien was acquired by the docketing of the judgment. It is no answer to say that the judgments contained a statement of the amount due. There was no *personal* judgment for this amount, nor was there anything in the nature of a personal judgment beyond the mere direction for the issuance of an execution in the event of the insufficiency of the mortgage property to pay the debt. The whole matter was contingent, indefinite and uncertain, and so long as this continued to be the case no effect whatever could be given to it." Under the doctrine in that case, the respondent Lewis never acquired a lien upon the premises in question, if his judgment is nothing more than the old chancery judgment in foreclosure cases; but, in our opinion, the judgment is a personal judgment for the amount of the debt, with the usual relief in equity superadded. Such being the case, it became a lien when docketed, as provided in the two hundred and fourth section of the Practice Act.

The first point made by counsel for appellant is as to the effect of an appeal upon a judgment lien, and it is claimed that the two years during which the lien is allowed to continue commences from the docketing of the judgment, notwithstanding an appeal may have been taken, and notwithstanding an undertaking on appeal may have been given sufficient to stay all proceedings upon the judgment in the Court below, pending the appeal.

And, in the second place, it is claimed that if an appeal, with a sufficient stay-bond, operates to postpone or suspend and continue the lien, so that the two years do not commence to run until after the date of the remittitur from this Court, no stay-bond sufficient for that purpose was given in the case of *Lewis* v. *Covillaud and Nye.*

1. The first proposition has been argued with much learning and ability by counsel upon both sides, but under the view which we have taken of the question, it becomes unnecessary to follow the line of argument which has been adopted.

As long as eight years ago this question came before the late Supreme Court, in the case of *Dewey* v. *Latson*, 6 Cal. 130, and after mature consideration was there decided adversely to the appellants. In that case the only point made was the same as that now under consideration, and the Court said: " The first reading of the Act would seem to be conclusive in favor of the appellant, but when we come to examine the legal solecism of allowing a party by his own motion thus to defeat the remedy which the law has given the creditor, and to destroy the security furnished, which must inevitably result if the construction contended for be sustained, we are necessarily put upon inquiry as to the intention of the Legislature and the possibility of escape from such absurd consequences.

" The obvious intention was to charge the estate of the judgment debtor, and to give the creditor two years to make his money. The statute intended that this time should run from the date of the judgment or period at which the plaintiff was in a situation to take out execution and pursue his remedy to final satisfaction. By the defendant's own act the force of that judgment has been suspended, and the lien, which is merely an incident, must share a like fate. It would be absurd to say that a lien attached upon a judgment and expired by its own limitation while the judgment was still *in fieri*, and could not be prosecuted to full fruition.

" The defendant would thus be able to abridge, if not destroy the lien, and in all cases where a period of more than two years intervened between the date of the judgment in the Court below and the final judgment in this Court, to substitute personal for that security which the law gives the successful party. It was never intended that a party, by prosecuting a frivolous appeal, should thus be allowed to take advantage of his own wrong."

The case of *Dewey* v. *Latson* has never been overruled. On the contrary, the construction of the two hundred and fourth section of the Practice Act came before that Court again only two years later, in the case of *Isaac* v. *Swift*, 10 Cal. 71, and

again, two years thereafter, in the case of *Chapin* v. *Broder*, 16 Cal. 403.

In the former case, *Dewey* v. *Latson* was cited by counsel and brought directly to the attention of the Court. Had the Court become dissatisfied with the rule established in *Dewey* v. *Latson*, an opportunity thus early was afforded in *Isaac* v. *Swift* to overrule that case, yet in the opinion of the Court no word of dissatisfaction is found. In *Chapin* v. *Broder*, the case of *Dewey* v. *Latson* is expressly mentioned, commented upon and explained by Mr. Justice Cope, who delivered the opinion of the Court, without expressing any dissent from the rule there established. On the contrary, in his opinion delivered on the petition for a rehearing, he clearly shows that the doctrine in *Chapin* v. *Broder* does not conflict with that announced in *Dewey* v. *Latson*, but on the contrary is in harmony therewith. Thus, whether correct or not, the construction of the section of the Practice Act in question, as given in *Dewey* v. *Latson*, has remained undisturbed for more than eight years, during which time it has been the rule of decision in the Courts and of conduct with the people. Great interests may have been acquired under the law thus expounded which might be prejudiced by a contrary exposition at this late day. Where such is the case no change should be made by the Courts, but if a change be demanded a resort to the Legislature should be had. Ruinous consequences might follow a change resulting from judicial tergiversation by reason of its retroactive effect, but none such can result from legislative interposition. Without, therefore, discussing the merits of the question, we rest our decision solely upon the doctrine of *stare decisis*, holding the present to be a case to which that doctrine ought to be applied.

It follows that where an appeal has been taken and a bond sufficient to stay proceedings upon the judgment pending the appeal has been given, the lien created by the two hundred and fourth section of the Practice Act remains a valid and subsisting lien upon all the real property of the judgment debtor, not exempt from execution in the county where the

judgment is docketed, owned by him at the date of the dock-
eting of the judgment, or subsequently acquired, until such
lien expires, and that the same does not expire until the end
of two years from and after the date of the remittitur from this
Court.

2. The next point made by counsel for appellant is to the
effect (assuming the law to be as we have declared) that no
appeal bond was given in *Lewis* v. *Covillaud and Nye* suffi-
cient to stay proceedings on the personal judgment during the
pendency of the appeal, and that as a consequence Lewis was
not prevented by the appeal from proceeding at any time to
enforce his money judgment by execution, and if so, that the
lien expired at the end of two years from the time the judg-
ment was docketed. If it be true, as contended, that the
bond given on appeal was not sufficient to stay proceedings on
the personal judgment, it follows, under the rule laid down
in *Chapin* v. *Broder*, that the lien was not extended by the
appeal beyond two years from the docketing of the judgment.

The three hundred and fifty-second section of the Practice
Act, under which the undertaking was given, provides that,
"If the judgment or order appealed from direct the sale or
delivery of possession of real property, the execution of the
same shall not be stayed unless a written undertaking be exe-
cuted on the part of the appellant, with two or more sureties,
to the effect that during the possession of such property by the
appellant he will not commit, or suffer to be committed, any
waste thereon, and that if the judgment be affirmed he will
pay the value of the use and occupation of the property from
the time of the appeal until the delivery of possession thereof,
pursuant to the judgment or order, not exceeding a sum to be
fixed by the Judge of the Court by which the judgment was
rendered or order made, and which shall be specified in the
undertaking. When the judgment is for the sale of mort-
gage premises and the payment of a deficiency arising upon
the sale, the undertaking shall also provide for the payment of
such deficiency."

This section is double, and provides for two distinct under-
45

takings upon two distinct kinds of judgments, one directing a sale of real property, and the other directing a delivery of the possession of real property. In a case where the judgment directs a sale, the undertaking need only provide security against waste, unless such sale is of mortgaged premises and the judgment provides for the payment of a deficiency, in which case it must provide for the payment of such deficiency. In such a case no provision need be inserted in the undertaking for the payment of the value of the use and occupation of the premises pending the appeal, for the obvious reason that the judgment creditor does not become entitled to the value of the use and occupation until after a sale has been made. (Practice Act, Sec. 236.) Where the judgment directs a delivery of the possession of real property the undertaking must provide against waste and for the payment of the value of the use and occupation, and for those two only, for there can be, in such a case, no question as to deficiency. (*Whitney* v. *Allen*, 21 Cal. 233.) Where the sale is directed for the purpose of satisfying any lien other than a mortgage lien, the undertaking need not provide for the payment of any deficiency which the judgment may direct. To this extent the statute discriminates in favor of mortgage and against all other liens. The lien in *Lewis* v. *Covillaud and Nye* was not a mortgage, but a vendor's lien. Hence, the undertaking in question is good only as an undertaking for costs and waste; beyond that it was not required by law, and was utterly void. Was such an undertaking sufficient to stay all proceedings upon the judgment in question?

We are aware that an impression has prevailed to a considerable extent among the members of the profession to the effect that in foreclosure cases, regardless of the character of the lien, no undertaking on appeal is required except for costs, as provided in section three hundred and forty-eight, and for waste, use and occupation and deficiency, as provided in section three hundred and fifty-two; but from a careful examination of the several sections of the Practice Act touching undertakings on appeal it is manifest that this impression

is without a substantial foundation.   The impression proceeds upon the theory that the lien remains a subsisting security for the payment of the money demand, but this is true only where there is no contest as to the validity of the lien ; for if the contest be as to the validity of the lien, and the appellate Court finally decide against its validity, the security which it is supposed to have afforded is gone, or rather it has never had an existence.   The only color which the statute gives to this theory is found in the three hundred and fifty-second section.   By providing for an undertaking against waste and for the payment of any deficiency arising upon the sale, that section seems to proceed upon the theory that the land, if no waste be committed, is security for the debt to the extent of its value, and that no further security is needed except as to a deficiency, should one arise upon the sale.   Such would undoubtedly be the case where the appeal makes no attack upon the validity of the lien, but the contrary is the result where the contest is as to the validity of the lien if the appellate Court decides against it.

But to this seeming theory of the three hundred and fifty-second section, the three hundred and fifty-fourth section is opposed.   That section provides that " the undertakings prescribed by sections three hundred and forty-eight, three hundred and forty-nine, three hundred and fifty, and three hundred and fifty-two, may be in one instrument or several, at the option of the appellant."   Thus the Legislature seems to have contemplated that a case might arise where the appellant would be required to give several or all of the undertakings provided for in cases of appeal, according to the character of the judgment and the extent of the appeal.   This view is in harmony with that provision of the statute which enables a party to appeal from the whole or any specific part of the judgment, (Practice Act, sec. 337,) and with that which limits the stay of proceedings to the judgment or order appealed from, and allows the Court to proceed upon any other matter included in the action and not affected by the judgment or order appealed from.   (Sec. 353.)

Our conclusions are, that where there is a money judgment only, the undertaking, in order to stay proceedings, must be in double the amount of the judgment; and if in addition to a money judgment there be a judgment for the delivery of documents, or the execution of a conveyance, or a sale of real property, or for the delivery of real property, an additional bond or bonds, as the case may be, must be given in order to stay proceedings upon each branch or part of the judgment, and that if there be a part or branch of the judgment as to which no bond is given, proceedings upon such branch or part are not stayed.

In the case of a judgment which directs the execution of a conveyance or other instrument, of course no bond, except for the money branch of the judgment, if such there be, is required, the appellant being required to execute and deposit with the clerk the conveyance or other instrument instead of the bond exacted in other cases.

In foreclosure cases, where there is no judgment *in personam*, but only a judgment in accordance with the old chancery practice, a bond for costs and a bond for waste and deficiency would be sufficient; but where the judgment is in the form authorized by our practice, as decided in *Rollins* v. *Forbes*, *Rowland* v. *Leiby*, and *Chapin* v. *Broder*, and it is desired to stay proceedings as to the whole judgment, there must be a bond for costs, a bond in double the amount of the personal judgment and a bond for waste and deficiency, all of which may be included in one instrument or several, at the option of the appellant. In the present instance the appeal was from the whole judgment, but no bonds were given except for costs, waste and deficiency. The first was sufficient for the purpose of perfecting the appeal, and the second was sufficient for the purpose of staying proceedings upon that branch of the judgment which directs a sale of the premises in question, but was not sufficient to stay proceedings upon that branch which gives a personal judgment against the defendants, and Lewis might at any time have proceeded by execution to enforce the collection of the money.

This disposes of the case and makes it unnecessary to consider the homestead question presented by the record.

As to the point made by the respondents to the effect that a sale of the premises, if no lien exists, would not create a cloud upon the plaintiff's title, we think the facts of the case bring it within the rule announced in *Shattuck* v. *Carson*, 2 Cal. 588; in *Guy* v. *Hermance*, 5 Cal. 73; in *Alverson* v. *Jones*, 10 Cal. 11; and in *Pixley* v. *Huggins*, 15 Cal. 127.

The judgment is reversed and the Court below directed to render a judgment in favor of the plaintiff, in conformity with the prayer of the complaint.

By the Court, SANDERSON, C. J., on petition for rehearing.

So far as the character and legal effect of the judgment in *Lewis* v. *Covillaud and Nye* are concerned we have announced no new principle, but have merely applied to the facts of this case principles which were established in *Rollins* v. *Forbes*, *Rowland* v. *Leiby*, and in *Chapin* v. *Broder*, cited in our former opinion. The following principles are established by those cases: In a foreclosure case the plaintiff may recover a personal money judgment and a decree forclosing the mortgage and directing the land to be sold for the purpose of satisfying that personal judgment; and secondly, if he does not obtain a personal judgment, but contents himself with the decree in use under the old chancery practice, such decree does not become a lien, under the two hundred and fourth section of the Practice Act. On the contrary, no lien attaches under such a judgment until after a sale has been had and the deficiency, if there be one, is ascertained and docketed, and then only for the amount of such deficiency. This twofold judgment is the fruit of our system of practice and beautifully exemplifies its superiority. Under the old system two suits would have been necessary in order to accomplish the same result. The result being accomplished the plaintiff might, under the old system, proceed by *fi. fa.* upon his judgment at law, or he might proceed under his decree in equity, but he

could not proceed upon both at the same time. The same is true under our system. Where a personal judgment is rendered at law, so to speak, and also a decree in equity is awarded, the plaintiff may proceed to enforce either, at his election, but he cannot proceed upon both at the same time. Such is the result when the principle announced in those cases is carried to its logical conclusion. When it is said that a personal judgment may be rendered in foreclosure cases the right to enforce the same by *fi. fa.* is necessarily implied. A judgment which cannot be enforced is no judgment at all, and we know of no way by which a mere money judgment can be enforced except by *fi. fa.* The decree in such a case is enforced by the Sheriff or Commissioner under a certified copy. The hypothesis from which counsel argue that in such a case there is but one judgment with different members merely, bearing a dependent relation to each other, is unwarranted. The true theory upon which the question under consideration proceeds is to the effect that there are two judgments, either of which may be enforced regardless of the other, with the qualification that they cannot both be enforced at the same time, and that the satisfaction of one is the satisfaction of the other. When the late Supreme Court said that a personal judgment might be rendered " against the mortgagor in addition to the relief usually granted in such cases," they meant a judgment which could be enforced by *fi. fa.,* or they meant nothing. Hence we held in our former opinion, and still hold, that where the plaintiff takes this double judgment he may, at his election, proceed by *fi. fa.* upon his money judgment or he may proceed to make his money by a sale of the mortgaged premises under his decree.

In this connection it is proper to remark that counsel have fallen into this fundamental error. They assume and argue that if A. gives B. his promissory note, and mortgages his land to secure its payment, B. thereby agrees to look to the land as a primary fund for the payment of his debt, and A. has the right to insist that he shall do so. We know of no such rule either at law or in equity. The mortgage is made for B.'s

security and not for A.'s protection.   By taking security B. does not waive A.'s personal liability either *in toto* or *pro tanto*. B. may waive the security at any stage and proceed upon the personal liability created by the contract.   (Of course, we limit this doctrine to cases where the rights of third persons are not involved.)   This error seems to have become an *ignis fatuus* by which counsel have been misled through their whole argument.   By its light they have sought to construe the judgment in *Lewis* v. *Covillaud and Nye*, and the result is such as might have been expected—a nondescript judgment with a single head, but Janus-faced, characterized by counsel as "*in personam et rem.*"   Counsel will not admit that there was no personal judgment, but claim that, although there was a personal judgment, it could not be enforced except through the decree of foreclosure.   This is blowing hot and cold.   It is tantamount to saying that there is a personal judgment and there is not.

The cause of this tergiversation is apparent.   In *Chapin* v. *Broder* it was held that where there was no personal judgment there could be no lien, under the two hundred and fourth section of the Practice Act, until after a sale of the mortgaged premises and the docketing of the deficiency.   To admit, therefore, that there is not a personal judgment is to admit that there is no lien, which is the sole question in controversy in the present case.   Hence, in order to maintain their standing in Court, counsel are compelled to insist that there was a personal judgment.   Then, having fortified themselves against Scylla upon the one hand, they are forced to guard against Charybdis on the other; but in order to do the latter they cannot admit that the personal judgment carries with it the right to a *fi. fa.*, for there is no appeal bond which stays its execution, and more than two years have elapsed since the judgment was docketed, and the lien is therefore lost.   Hence they claim a personal judgment which cannot be executed until after a sale under the decree, and then only to the extent of a deficiency, should there be one—a judgment, when considered as a personal one, confessedly *felo de se* in part, and perhaps

*in toto.* It is a misnomer to call a judgment which has such incidents annexed to it a personal judgment. It is nothing more than the old chancery decree.

In support of the theory that the personal judgment is not full-fledged, counsel call attention to the fact that it does not terminate with the ordinary phrase "for which let execution issue," and that nothing is said about the issuing of an execution until we come to the end of the decree, where the issuing of an execution, for any deficiency which may be found to exist, is authorized, and that therefore the judgment, by its own terms, is made to prescribe the order of its own execution, and that the order thus prescribed cannot be departed from except by special license of the Court. Admitting this to be so, it is not a little surprising that counsel do not perceive that a consequence must follow which is fatal to their case, by destroying entirely the judgment lien, upon which alone they rely. By this construction the money part of the judgment is made dependent upon the decree for its enforcement, and the mortgaged premises are made a primary fund, which must be exhausted before a *fi. fa.* can issue. Thus the judgment is provided with a special lien, resulting from its own terms. To such cases the two hundred and fourth section does not apply. That section creates no additional lien where one already exists, until after the special lien has been exhausted, and then only to the extent of the deficiency. It was so held in *Chapin* v. *Broder.* That section was intended to secure a lien only for such judgments as are purely money judgments, without any lien resting in contract, or in other words judgments which are to be enforced by *fi. fa.* Thus, the only theory upon which it can be claimed that the judgment in *Lewis* v. *Covillaud and Nye* became a lien under that section is the one which we have adopted, to the effect that there was a personal money judgment, so far independent of the decree that it could, at the election of the plaintiff, be first enforced by a *fi. fa.* That there was such a judgment we have no doubt. The mere fact that it did not conclude with the phrase "for which let execution issue," has no significance. That phrase is unnecessary.

It is of the form and not the substance.    The judgment being pronounced by the Court, the law, *ex proprio vigore,* directs the final process to issue.    That there was such a judgment, in the opinion of the late Supreme Court also, is apparent from the judgment which they rendered on the appeal, which is in these words: "Our conclusion is, that as to the lien, the judgment should be reversed, but that in other respects it should be affirmed."    That is, so far as the decree is concerned the judgment is reversed, but as to the personal judgment it is affirmed.    Under this personal judgment, as we held in our former opinion, the respondent acquired a lien, but he failed to enforce it within the two years through which it extended. It was not suspended during the appeal, for the obvious reason that no undertaking on appeal from the personal judgment was given, as required by the three hundred and forty-ninth section of the Practice Act.

Rehearing denied.