WILLIAM THOMPSON *vs.* JOHN DALE *et al.*

Argued July 19, 1894.   Reversed July 23, 1894.

No. 8839.

**Practice in Lien cases under 1878 G. S. ch. 90, follows that in the foreclosure of a mortgage.**

In the matter of obtaining and enforcing judgments under the former mechanic's lien law, (1878 G. S. ch. 90, § 8,) the statute adopts the procedure obtaining in actions to foreclose real-estate mortgages.

**In foreclosure, judgment can not be docketed before sale.**

The statute regulating the foreclosure of mortgages by action (1878 G. S. ch. 81) does not authorize, in addition to a decree of foreclosure, the docketing of personal judgment against the mortgagor, so as to become a lien on his other real estate, before sale of the mortgaged premises and the application of the proceeds upon the debt.

Appeal by plaintiff, William Thompson, from an order of the District Court of Ramsey County, *William Louis Kelly*, J., made February 23, 1894, striking out a portion of his reply.

Plaintiff owned the south seventy five feet in length of lot four (4) in block thirty three (33) in the original plat of West St. Paul and brought this action under 1878 G. S. ch. 75, § 2, to determine the adverse claims and liens of the defendants, John Dale, Anthony Provost and Walter Ife. John Dale and Anthony Provost answered that on January 24, 1890, in an action brought in the District Court of Ramsey County by William Coxford, Jr., against Marie A. Hornsby, Augustus H. Hornsby, Wesley Leavitt, Anthony Provost and Walter Ife judgment was duly rendered and docketed against Marie A. Hornsby in favor of Provost for $1,020.10 and in favor of Ife for $277.40. That Marie A. Hornsby then owned and had record title to this lot and the judgments became and are a lien thereon. That Ife on March 19, 1890, sold and assigned his judgment to defendant, John Dale, and that both judgments remain of force unsatisfied.

To this answer plaintiff replied alleging among other things that Coxford began that action and prosecuted it to final judgment solely, for the purpose of foreclosing a mechanic's lien for materials he furnished Marie A. Hornsby in 1888 in the construction of a house on a lot in another block of West St. Paul. That Provost and Ife

answered in that action and each claimed a lien on that other lot for materials furnished by them in the construction of the house thereon, under 1878 G. S. ch. 90, the lien statute then in force. That judgment was entered in that action January 24, 1890, against her for $1,020.10 in favor of Provost and for $277.40 in favor of Ife, and both were declared specific liens on that property and ordering it sold to satisfy the judgments pursuant to the statute, but did not direct or authorize the docketing of the judgments or the issuance of execution thereon until after the coming in of the report of sale. That owing to prior incumbrances no sale has been made or attempted, that Marie A. Hornsby then owned the lot here in question, but it was not involved or mentioned in the Coxford suit and plaintiff subsequently purchased it and received a conveyance from her. That the judgments were docketed by the clerk contrary to law, and this is evident on inspection of the judgment itself and that neither is a lien on plaintiff's lot.

The defendants Dale and Provost moved the court on the pleadings and notice to strike out of the reply these allegations as irrelevant and constituting no defense to the matters stated in the answer. The trial court granted the motion and plaintiff appeals.

*J. C. Michael*, and *A. R. Capehart*, for appellant.

The fact that the clerk wrongfully docketed the judgments gives them no additional force, nor does his wrongful act make them a lien. To attack the act of the clerk in so docketing them is not a collateral attack upon the judgments. The rendition of a judgment by the court is a judicial act, while the mere transcribing of the judgment and docketing it by the clerk are only ministerial acts. It has already been decided by this court that the docketing of a judgment prior to its entry in the judgment book is void. *Rockwood* v. *Davenport*, 37 Minn. 533.

The lien law under which these judgments were recovered, 1878 G. S. ch. 90, § 8, provides that any person holding a lien may proceed to obtain judgment and enforce the same in the same manner as in actions for the foreclosing of mortgages upon real estate. The statute in reference to foreclosure, 1878 G. S. ch. 81, provides that judgment shall be entered under the direction of the court adjudging the amount due and directing a sale of the mortgaged premises

to satisfy said amount. It provides for the confirmation of the sale upon the coming in of the sheriff's report, and that the clerk shall after confirmation enter satisfaction of the judgment to the extent of the sum bid, less expenses and costs, and for any balance execution may issue, but no such execution shall issue until after a sale of the mortgaged premises and the application of the amount realized.

These judgments were not entitled to be docketed prior to a sale and report. If not entitled to be docketed, they did not by a wrongful docketing become general liens. To entitle a judgment to be docketed it must be for a definite and ascertained sum of money upon which the creditor is entitled to have execution issue at once. Freeman, Judgments (3rd Ed.) §§ 339, 340, and cases cited.

As the issuance of execution is prohibited by 1878 G. S. ch. 81, § 33, it would seem clearly to indicate that no docketing of the judgment was contemplated prior to the time the mortgagee is entitled to take execution for the enforcement of the deficiency, because then, for the first time, is it ascertained what is the definite amount which is to be enforced as a personal liability. It has been frequently held that where the property cannot be taken in execution there is no lien. Formerly the lien was inseparably associated with the right to take out an elegit. If this right was suspended the land was free from the lien during such suspension. Freeman Judgments, §§ 339, 340, and cases cited; *Chapin* v. *Broder*, 16 Cal. 403; *Englund* v. *Lewis*, 25 Cal. 337; *Culver* v. *Rogers*, 28 Cal. 520.

*Dodd & Bowman*, for respondent.

A collateral proceeding is one which is not instituted for the express purpose of annulling, correcting or modifying the judgment or enjoining its execution. If the jurisdiction of the court is unquestioned a domestic judgment may not be collaterally impeached for errors in law or irregularities of practice. Unless then it appears from the pleadings that the court had not jurisdiction to enter these judgments, the plaintiff is in no position to question them and the matter in the reply was properly stricken out. *Ferguson* v. *Kumler*, 25 Minn. 183.

In mortgage foreclosures, under 1878 G. S. ch. 81, Title 2, and in the foreclosure of mechanics' liens which come under the same provisions, it is proper for the plaintiff to recover judgment *in personam*

and docket it, and at the same time obtain a decree for the sale of
the property to satisfy the judgment. *Abbott* v. *Nash,* 35 Minn.
451; *Smith* v. *Gill,* 37 Minn. 455; *Slingerland* v. *Sherer,* 46 Minn.
422; *Rollins* v. *Forbes,* 10 Cal. 299; *Rowland* v. *Lieby,* 14 Cal. 157;
*Chapin* v. *Broder,* 16 Cal. 403; *Boggs* v. *Hargrave,* 16 Cal. 559;
*Fletcher* v. *Holmes,* 25 Ind. 458; *Eames* v. *Germania Turn Verein,*
74 Ill. 54.

MITCHELL, J.    The sole question presented by this appeal is
whether, in an action to enforce a lien under the former mechanic's
lien law, 1878, G. S. ch. 90, a personal judgment for the amount of
the debt could be docketed, and become a lien on the general property
of the lienee, or other party personally liable for the debt, before the
sale of the premises subject to the specific lien, and the application of
the amount realized by the sale.

Section 8 of chapter 90 provided that any person holding a lien
under that chapter might proceed to obtain judgment and enforce the
same in the same manner as in actions for the foreclosing of mort-
gages upon real estate.    To decide the question here presented, re-
sort must therefore be had to the statutes regulating foreclosure by
action.

1878 G. S. ch. 81, § 29, provides that "judgment shall be entered,
under the direction of the court, adjudging the amount due with costs
and disbursements, and the sale of the mortgaged premises or some
part thereof to satisfy said amount, and directing the sheriff to pro-
ceed and sell the same according to the provisions of law relating to
sales of real estate on execution, and make report to the court."

Section 33 provides that "upon confirmation of the report of sale
the clerk shall enter satisfaction of the judgment to the extent of
the sum bid for the premises, less expenses and costs, and for any
balance of said judgment execution may issue as in other cases; but
no such execution shall issue on such judgment until after a sale of
the mortgaged premises and the application of the amount realized
as aforesaid."

Under the old equity practice the court of chancery could not ren-
der a personal judgment against the mortgagor for the deficiency,
after applying the proceeds of the mortgaged premises.    The mort-
gagees had to resort to a court of law for that purpose.    But in all

or nearly all the American states the right to a personal judgment for such deficiency has been so long conferred by statute that it has become practically a part of the common law of the country. The almost universal practice has been for the decree of foreclosure to determine the amount due on the mortgage, direct a sale of the premises, and provide for the rendition of a personal judgment against the mortgagor for the deficiency after application of the proceeds of the sale; and then, after the amount of the deficiency was thus ascertained, the court would order personal judgment for that definite sum. Such was the practice in this state prior to 1866. 1851 R. S. ch. 94, § 58.

Any such practice as rendering personal judgment, in connection with or as a part of the decree of foreclosure, for the full amount of the debt, and docketing the same so as to become a lien on the other real estate of the mortgagor, before sale of the mortgaged premises, was practically unknown.

The supreme court of California held that section 246 of their practice act (unlike our statute) authorized this, and that such a judgment might be immediately enforced by general execution. See *Englund* v. *Lewis*, 25 Cal. 358. This radical departure from the usual practice was evidently unsatisfactory, for the legislature promptly amended the statute in 1861 so as to prohibit this being done. There is nothing in the language of our statute to indicate that the legislature intended to make the radical change in practice and procedure contended for by defendants.

The judgment or decree prescribed in 1878 G. S. ch. 81, § 29, is the ordinary equity form in foreclosure cases, the language being, "adjudging the amount due," which does not amount to a personal judgment, and only comes to have the effect of one after certain things are done by virtue of subsequent provisions of the statute. The fact that it is called a judgment does not imply that it is a personal one, any more than in the case of the judgment in strict foreclosure provided for in section 43 of the same chapter; and, whatever form of words may be used, it will only have the effect which the statute gives it, viz. an adjudication of the amount due.

The only authority for issuing a general execution is for the deficiency or balance after the application of the proceeds of sale to the debt. Had section 33 stopped with this, there would probably not

have been much doubt about the meaning of the statute. But the last clause of that section, instead of enlarging what went before, was evidently added, for greater caution, to guard against a misconstruction of what preceded. The provision that a general execution can only issue for any balance, and that such execution can only issue after sale of the mortgaged premises and the application of the amount realized, is entirely inconsistent with the idea of a personal judgment for the full amount of the debt before sale; for the general rule is that a lien by judgment does not exist, except in consequence of the right of an execution for its enforcement. The lien of a judgment is a consequence of the right to sell real estate for its satisfaction, and whenever the right is conceded the existence of the lien is generally admitted; but whenever that right is denied the existence of the lien is also denied. Freem. Judgm. § 339. A judgment without the right of execution to enforce it is really no judgment. The docketing of a judgment, and the lien thereby acquired, performs the office, and takes the place of an actual levy on land.

Some of the language used in the statute is somewhat peculiar, and might seem to point towards the idea of a personal judgment for the whole debt in the first instance, upon which is to be subsequently credited the proceeds of sale. But taking all the provisions of the statute together, and construing them according to their legal import rather than their literal language, we are clearly of the opinion that they neither contemplate nor authorize a personal judgment, except for the balance of the debt remaining after the application of the proceeds of the sale of the mortgaged premises. Under the former statute such judgment could only be rendered upon the order or supplemental decree of the court after sale, and after the amount of the deficiency was definitely ascertained. The only change made by the present statute is that the amount of such deficiency is ascertained by the clerk by the mere act of subtracting the net proceeds of sale from the amount adjudged due; and, that being done, the "adjudication of the amount due" becomes operative, by virtue of the provisions of the statute, as a personal judgment for such balance, thus avoiding the necessity of any further or supplemental order of the court for judgment.

Nothing inconsistent with this view will be found in either *Dodge* v. *Allis*, 27 Minn. 376, (7 N. W. 732,) or *Slingerland* v. *Sherer*, 46 Minn.

422, (49 N. W. 237,) if the precise questions before the court in those cases are kept in view. What we have said has reference only to personal judgment in connection with the usual relief granted in foreclosure actions. If a plaintiff establishes a cause of action for the recovery of money, but fails to establish his right to a specific lien, he would obtain an ordinary personal judgment, with all its incidents. This serves to distinguish from the present case a line of our decisions which defendants also cite as authority. There is nothing in the point that this is a collateral attack on the judgment. It only goes to the ministerial act of the clerk in docketing this as a personal judgment. If unauthorized by law, the act is void, but this does not affect the validity of the judgment.

Order reversed.

BUCK, J., absent, did not sit.

(Opinion published 59 N. W. 1086.)

Reargument denied October 9, 1894.