## No. 5828.

### State ex rel. J. C. Moncure vs. A. Dubuclet.

The contesting of an election must necessarily be conducted in conformity with some law authorizing it. If the relator in this case proceeds under the act of 1855 this court thinks that its provisions do not apply to said case. By that act provision is made for contestations of elections held for parish and ward officers only, and summary proceedings are required. This is the only law found in our statutes that authorizes courts to go into the business of inquiring into and determining the qualifications of voters, the correction of poll-books, etc,, and this law applies specially to the election of parish and ward officers.

If this act of 1855 applies to the case at bar, which is not admitted, all its provisions would apply. Then the prescription of ten days would be fatal to the relator's case, for this suit was not brought except after the lapse of more than six months from the time the election was held. Besides, from the judgment rendered against the relator in the lower court relator could not have appealed.

If the relator claims that the act of December 18, 1872, establishing the Superior District Court of New Orleans, gives that tribunal jurisdiction to try a contested election for any State office, then, if that statute does not prescribe other terms of prescription of actions to contest elections and prescribe other formalities of proceeding in contested cases, the rules of conducting such cases and the terms of prescription defined in the Revised Statutes, articles 1418, 1419, and 1421, would apply and prove equally fatal to the relator's case.

The functions of the Returning Board, so far as relates to the elections of November, 1874, ceased when the board completed the investigation of the election returns from the various parishes of the State and made their official report of the results. They were then without power to take any further action on the subject. It is not in the power of a court by mandamus to require the individuals who composed that board to re-assemble and act in the capacity of a returning board. Under no circumstances could a mandamus issue requiring a returning board to do more than perform its duties, if it refused to perform them. A court is wholly without power to determine how these duties shall be performed. The mandamus, for these reasons, was properly rejected.

One purpose in organizing the Superior District Court was to have the vexed questions of intrusion into office, so frequently arising under peculiar political circumstances, as to who held the proper commission or authority from conflicting sources, promptly disposed of, and to that end the Superior District Court was authorized to entertain all proceedings and to try all cases or actions in which the right to any office—State, parish, or municipal, is in any way involved.

State ex rel. Moncure vs. Dubuclet.

The act creating the Returning Board provides that the returns of elections thus made and promulgated shall be *prima facie* evidence in all courts of justice and before all civil officers, until set aside after a contest according to law. The contest then which involves the rebuttal of the *prima facie* evidence of the correctness of the returns of the Returning Board and the re-opening of the investigation of the election returns in order to determine which of two opposing candidates is entitled to a given office, is a contest to be made according to law. If the law-maker has omitted to enact the law under which proceedings in such cases are to be conducted, it is a *casus omissus* which the courts can not supply. Article ten of the constitution of the State, invoked by the plaintiff, is not available. In civil governments, rights are enforced by rules and methods having the authority of law, and they can be legally enforced in no other way. The high behests of the organic law are not always self-enforcing; the manner in which its commands are to be obeyed is often left to be provided by the legislative branch of the government. To this branch of the State government the organic law delegates the power to provide rules and principles by which its provisions are to be made practically useful, and especially so when the organic law is silent on the subject. Without such prescribed rules established by law, courts have no guide by which to proceed in their investigation of litigated questions.

APPEAL from the Superior District Court, parish of Orleans. *Hawkins*, J. *F. C. Zacharie* and *W. R. Whitaker*, for relator and appellant. *J. Q. A. Fellows* and *John Ray*, for respondent and appellee.

TALIAFERRO, J. The plaintiff alleges that, at the general State election on the second of November, 1874, he was elected Treasurer of the State of Louisiana, having received a large majority of the votes cast by the legal voters of the State; that the defendant was his competitor and was illegally returned as duly elected to the said office by the Returning Board of Elections, composed of J. Madison Wells, president; Thomas C. Anderson, Louis M. Kenner, and G. Casenave, the relator averring that he received, on the entire vote of the State, a majority of more than three thousand votes over his competitor. He alleges specially that the Returning Board refused to count, and did not count, the relator's majority of one thousand and forty-three votes obtained by him in the parish of De Soto; that the said board did, contrary to law, refuse to count any returns at all from the parishes of De Soto, Grant, and Winn; that the aggregate vote of these parishes was forty-seven hundred for relator and six hundred and sixty-seven for Dubuclet, being twenty-one hundred and eighty majority in favor of the relator, of which he was deprived. He specifies various other acts of the Returning Board in compiling the returns of the election and in making out their estimates of the results of the elections in the different parishes, which he charges to have been irregular and illegal, and redounding to his injury as a candidate for the office of Treasurer.

The relator prays service of petition and citation on Antoine Dubuclet, and he prays that a writ of mandamus issue to the members of the Returning Board commanding them to assemble and canvass the returns of the aforesaid parishes, viz.: Bienville, De Soto, Grant, and Winn, and promulgate the same; that, upon the other issues set forth a jury be

called to determine them; that there be judgment in his favor, declaring that the commission issued to Antoine Dubuclet as Treasurer was improvidently issued; that he illegally holds the office of State Treasurer; that relator be decreed to have received a majority of three thousand eight hundred and seventy-six of the votes legally polled throughout the State at the election aforesaid for the office of Treasurer of the State, and therefore entitled to the said office.

A rule *nisi* was issued to the officers of the Returning Board, who responded to the order by exception on these grounds:

First—That there is in the relator's suit an improper joinder of parties and an improper cumulation of different causes of action.

Second—That there is no cause of action set up by relator's petition against these respondents.

Third—That there is a commingling of allegations in the petition, leaving it doubtful what cause of action the relator seeks to prosecute, the petition being vague and uncertain.

Fourth—That if the object be to contest the election of Antoine Dubuclet the respondents have no interest in the contest; that the court is without jurisdiction *ratione materiæ;* that the law does not authorize the contestation of the election of State Treasurer; and if it did, which is denied, the action is prescribed by ten days.

Fifth—That there is no cause of action against these respondents, whatever may be the suit; that courts are without jurisdiction to inquire into their action as a returning board, or to prescribe their course of action; that the law prescribes their duties, and their acts are limited by their sound discretion under the law, and their findings are not subject to review by any court.

The respondents, in their answer, sworn to by the president of the board, declare that "they commenced the exercise of their functions as a returning board on the eleventh of November, 1874, and completed their work on the twenty-fourth of December following, and promulgated the same according to law; that they have become *functus officio*, and have no further legal authority in the premises; that their action is final, and no mandamus will lie against them."

The answer then declares that, "in relation to the parish of De Soto, no legal return of the election in that parish was made to the returning officers by the supervisor of registration, and consequently they were without means to canvass, count, and compile the votes of that parish, if any election was held in it; that in regard to the parish of Winn, there was evidence before the Returning Board that there was no supervisor of registration in that parish to register the voters and to conduct the election, and that there was no legal election held in that parish on the second of November, 1874.

"Concerning the parishes of Bienville and Grant, the evidence before the Returning Board showed that at no poll or place of voting in either of these parishes was there a full, fair, and peaceable election, on account of acts of violence, intimidation, and corrupt influence, such as to materially interfere with the freedom and purity of elections; and, consequently, upon taking testimony of witnesses to ascertain the facts in relation to these matters, and ascertaining that such a condition of things did exist, as stated, the returning officers, in conformity with law, rejected the several polls from these parishes."

On the part of Dubuclet, an exception was filed containing, in substance, the same matters set up in the exception of the officers of the Returning Board, with the further exception that if the relator's cause of action is one under the intrusion act, then the petition sets forth no muniment of title in the relator, Moncure, which authorizes proceedings under that act; that in relator's petition no cause of action is set up.

By the judgment of the court a qua the exceptions were sustained, the mandamus prayed for refused, and the suit dismissed. The relator appealed.

We think the exceptions were properly sustained and the judgment dismissing the case correctly rendered. The contesting of an election must necessarily be conducted in conformity with some law authorizing it. Under what law does the relator proceed? If it be under the act of 1855, we do not think its provisions apply to his case. By that act provision is made for contestations of elections held for parish and ward officers only, and summary proceedings are required. The contestant must, within ten days after the election, present to the court a petition signed by at least twenty voters of the parish, praying the court to examine the facts and decide thereon. The adverse party is required to answer after ten days from service of petition, and the issue to be proceeded with summarily before a jury. The jury is authorized to decide which of the parties is entitled to the office, or to return the matter to the people for a new election. No new trial or appeal is allowed. This is the only law found on our statutes that authorizes courts to go into the business of inquiring into and determining the qualifications of voters, the correctness of poll-books, rejecting votes found to be illegal, correcting and compiling returns of elections, questions arising as to the legality of the mode, time, and place of holding elections, adjusting the reports of commissioners of election, and generally all the details relating to the proceedings required in the holding of elections. And this law applies specially to the election of parish and ward officers.

If this act of 1855 applies to the case at bar, which we by no means admit, all its provisions would apply. Then the prescription of ten days would be fatal to the relator's case, for this suit was not brought until

after the lapse of more than six months from the time the election was held. Besides, from the judgment rendered against the relator in the lower court he could not have appealed.

If the relator claims that the act of December 18, 1872, establishing the Superior District Court of New Orleans, gives that tribunal jurisdiction to try a contested election for any State office, then, if that statute does not prescribe other terms of prescription of actions to contest elections, and prescribe other formalities of proceeding in contested cases, the rules of conducting such cases, and the terms of prescription defined in the Revised Statutes, articles 1418, 1419, and 1421, would apply, and prove equally fatal to the relator's case.

So far as relates to the general election of November, 1874, the functions of the Returning Board ceased when the board completed the investigation of the election returns from the various parishes of the State and made their official report of the result. They were then without power to take any further action on the subject. It is not in the power of a court, by mandamus, to require the individuals who composed that board to re-assemble and act in the capacity of a returning board. Under no circumstances could a mandamus issue requiring a returning board to do more than perform its duties, if it refused to perform them. A court is wholly without power to direct *how* these duties shall be performed. The mandamus, for these reasons, was properly refused.

It is clear to our minds that the act of the eighteenth of December, 1872, establishing the Superior District Court does not authorize the contesting of any election not previously authorized by law to be contested. In the structure of that part of the act relating to elections the term *contest* is not used; the prominent characteristic expression used is "*right to any* office, State, parish, and municipal," clearly indicating and embracing the intrusion-into-office act. As a matter of contemporaneous history, we judicially know that titles to office were about that period issued by adverse and conflicting persons, each claiming to rightfully wield the authority of the State and to direct the State government. Commissions in great numbers were thus issued, and frequent disturbing difficulties arose from the conflictions between different parties holding commissions for the same office. One purpose in organizing the Superior District Court was to have these vexed questions as to who held the proper commission or authority promptly disposed of, and to that end the Superior District Court was authorized to entertain all proceedings and to try all cases or actions in which the right to any office, State, parish, or municipal, is in any way involved.

But it would seem the relator himself relies chiefly on article ten of the State constitution, which declares that "all courts shall be open, and every person for injury done him in his lands, goods, person, or reputa-

tion shall have adequate remedy by due process of law, and justice administered without denial or unreasonable delay."

Let it be conceded, for the argument's sake only, that this article of the constitution embraces the controversial disputes growing out of elections; that the wrong complained of by the relator is one to be redressed under and by the provisions of the article quoted. Then he is entitled to an adequate remedy by due process of law. The article of the constitution does not prescribe this process of law that he is entitled to. Justice shall be administered without denial or unreasonable delay. The article is silent as to how justice shall be administered. Yet, in seeking the adequate remedy, due process of law must be followed; justice is to be administered by due process of law. It is for the Legislature to prescribe the due process of law; to establish and define rules under which proceedings to determine which of two candidates for a State office received a majority of the votes cast throughout the State for that office, when one of these candidates charges that, through error or fraud, the Returning Board has illegally and wrongfully returned his competitor duly elected instead of the complainant, who insists that he was duly and legally elected. The returns made by the Returning Board are made *prima facie* evidence of their correctness, but subject to revision. Now, we are unable to find that the Legislature has prescribed the process of law, the rules to be followed by the courts, the *modus operandi* to be observed in having the returns of the Returning Board corrected if erroneous or fraudulent. The courts are open, but it is not for them to enact laws prescribing the manner in which the action of the Returning Board is to be judicially revised. The redress sought for by the relator involves the contesting of votes. This court, in the case of the State vs. the Judge of the Second District Court, 13 An. p. 90, announced that "the contesting of votes is not a judicial function, only so far as made such by special statute. Indeed, some have gone so far as to question whether this is not wholly a matter of administration, which can not with propriety be referred to the judicial tribunals at all. At any rate, it is clear that such tribunals can not usurp any greater control over this business than is specially imposed upon them by law. In the absence of a statutory authorization they are without jurisdiction *ratione materiæ.*"

In the case of Colin vs. Knoblock, 25 An. 263, the same views were expressed. It was there said that " the adjustment and compilation of election returns, determining the number of legal and illegal votes cast for each candidate, declaring the result of an election, and furnishing the successful candidate with the proper certificate; in short, superintending and controlling all the details of an election, belong primarily and properly to the political department of the government."

We nowhere find that the law-making power of the State has referred

to judicial action contested elections involving an inquiry into all the details of an election, except by the act of 1855, which, as we have already seen, is specially restricted to the election of parish and ward officers.

The act creating the Returning Board provides that the returns of elections thus made and promulgated shall be *prima facie* evidence in all courts of justice and before all civil officers *until set aside after a contest according to law.* The contest, then, which involves the rebuttal of the *prima facie* evidence of the correctness of the returns of the Returning Board, and the re-opening of the investigation of the election returns in order to determine which of two opposing candidates is entitled to a given office, is a contest to be made according to law. If the law-maker has omitted to enact the law under which proceedings in such cases are to be conducted, it is a *casus omissus* which the courts can not supply. In civil government, rights are enforced by rules and methods having the authority of law, and they can be legally enforced in no other way. The high behests of the organic law are not always self-enforcing; the manner in which its commands are to be obeyed is often left to be provided by the legislative branch of the government. To this branch of the State government the organic law delegates the power to prescribe rules and principles by which its provisions are to be made practically useful, and especially so when the organic law itself is silent on the subject. Without such prescribed rules established by law, courts have no guide by which to proceed in their investigation of litigated questions brought before them. Proceeding under prescribed rules in determining controversies, the judge is authorized to decide according to equity where there is no positive law applicable to the case; but he must acquire a knowledge of the merits of the case, and reach conclusions by pursuing established rules for acquiring such knowledge by evidence presented for his consideration. It is, then, a fallacy to say that courts can assume to determine controversies not referred to them, and in relation to the investigation of which there are no established rules and principles required by law to be followed.

Judgment affirmed.

---

HOWELL, J., *concurring.* Counsel for plaintiff admit that this suit is not brought under any act of the Legislature relative to elections, but is based solely on the tenth article of the constitution, which is in these words: "All courts shall be open, and every person, for injury done him in his lands, goods, person, or reputation, shall have adequate remedy by due process of law, and justice administered without denial or unreasonable delay."

And it is contended that this brings the subject of elections within the

judicial department, and authorizes every candidate for office to bring suit against his opponent, to have the regularity and legality of the election tested in the courts under the rules of practice common to all litigants. If this were so, it was useless to prescribe any rules in regard to contesting elections or getting possession of offices. But article ten does not establish any new rule of right in this State. It merely affirms a right which has always been recognized.

Admit, however, that it does bring the contest for office within the domain of the judiciary, it does not take from the Legislature the legislative prerogative of prescribing rules of procedure; but it implies that the Legislature shall do so, for the article declares that the person injured shall have adequate remedy by due process of law. The Legislature has acted on the subject since the adoption of said article, and has not provided the remedy as to the office claimed by relator. We can not supply the omission. The doctrine urged on behalf of relator would, in my opinion, enable the judiciary to control and absorb the other departments and become the government of the State. But I do not think this article refers to claims to hold office, which in our form of government is not a vested right. Ours is essentially a government of laws, and offices are created not for the office-holder, but for the benefit of the people, whose agents the officers are, and any injury that may arise is not strictly personal to the candidate, but to the electors. The selection of such agents or officers is a purely political function, to be exercised and carried out under the rules fixed by the legislative department and the special provisions of the constitution, and is not subject to judicial action, except where expressly made so by legislation. 13 An. 90; 25 An. 264, 267. The clause of the election law making the "returns" *prima facie* evidence, refers necessarily to the actions provided by law, and can be set aside only in the manner prescribed.

In any view of the case, I can not see that the plaintiff has shown any cause of action under existing laws, and for the foregoing reasons I concur.

---

WYLY, J., *dissenting*. Moncure alleges that he was elected State Treasurer, but that the Returning Board, by refusing to canvass and count the votes at certain polls and in certain parishes, and by rejecting others after investigation, so changed the result as to make it appear that Dubuclet received a majority of the votes, and so declared, and Dubuclet was thereupon commissioned. He charges that the canvass was not fairly made, and the conduct of the Returning Board was arbitrary and fraudulent.

The petition was dismissed on the exception that it disclosed no cause

of action, and the court was without jurisdiction to inquire into the action of the Returning Board; that its acts are limited to its own discretion, and its findings are not subject to review by any court.

The doctrine that the Board of State Canvassers, or the Returning Board, is vested with the power contended for by defendant, and that its action can not be revised by the courts, however arbitrary and fraudulent it may be, is a doctrine that is not supported by act No. 98 of the acts of 1872, the law organizing said Returning Board, nor is it authorized by any law of this State. On the contrary, the law creating the Returning Board and providing for the canvass of the votes after an election declares that "the returns of the elections thus made and promulgated shall be *prima facie* evidence *in all courts of justice* and before all civil officers, *until set aside after a contest according to law* of the right of any person named therein to hold and exercise the office to which he shall by such return be declared elected."

What does this language mean? It means what it says: That the findings of the Returning Board are not conclusive, but they are only *prima facie* evidence in all courts of justice, *"until set aside after a contest according to law."*

The intention of the law-giver is not obscure. It clearly contemplates a review of the action of the Returning Board by the courts whenever a complaint is made by a party interested that the canvass made by such board is unfair, arbitrary, or fraudulent, and that it is injurious to the complainant.

There is no doubt the statute in question was passed in reference to article ten of the constitution and the laws of the State, giving a remedy where there is a wrong. Article ten of the constitution declares that, "all courts shall be open, and every person for injury done him in his land, goods, person, or reputation, shall have adequate remedy by due process of law, and justice administered without denial or unreasonable delay." If Moncure was elected State Treasurer by a majority of 3876 votes over his opponent, Antoine Dubuclet, and was fraudulently counted out by the Returning Board, as he alleges in the petition (and this averment must be taken as true for the purpose of trying this exception, that there is no cause of action), he has been unjustly deprived of his office, his rights have been invaded, and by article ten of the constitution the courts are open to him, and " adequate remedy by due process of law and justice shall be administered " to him " without denial and unreasonable delay." See, also, 27 An. 138. I had occasion, in my dissenting opinion in the case of Bonner vs. Lynch, 25 An. 267, to argue this question very fully, and I cited authorities from nearly all the States of the Union showing that the action of a State board of canvassers or a returning board is not beyond the reach of judicial inquiry; that the duties of such

a board are ministerial, and can be reviewed by the courts. I will not repeat the argument, but simply refer to my opinion in that case in support of the position I take in this. Under the constitution of this State the General Assembly could not, if it desired, confer judicial power on the Returning Board, because article seventy-three provides that "the judicial power shall be vested in a Supreme Court, in district courts, in parish courts, and in justices of the peace." ·

In my opinion the petition discloses a cause of action, and the canvass of the Returning Board is not beyond the reach of judicial inquiry. It is the election by the people, and not the certificate of the Returning Board, that gives a right to an office. I think the case should be remanded to be tried on the merits.

It is urged, however, that if the act of 1872 contemplated a review of the action of the Returning Board by the courts, the General Assembly by oversight neglected to prescribe the form of procedure, and therefore this intention can not be carried into effect. It is a sound rule of construction that where a statute gives a right and fails to indicate the form of the action to enforce it, the court will presume that the law-giver intended the right to be asserted under the general rules of practice existing at the time; that where no special form of action is mentioned in the statute giving the right, the law-giver intended the right to be asserted under the usual forms of pleading.

In my opinion the statute in question was passed in reference to article ten of the constitution; and in all cases where a special form of action is not provided legal rights may be asserted in the usual forms of procedure in our courts. The best evidence that the law-giver intended no special form of action for cases arising under the statute is, that such intention is not disclosed in the act, and no special form of action is given.

I will not impute to the General Assembly the lamentable weakness of giving a right and neglecting to furnish a remedy to enforce it. Nor do I think it proper for this court, invested with jurisdiction both of law and equity, to permit substantial rights to be lost for technical reasons, or to decline to protect a citizen in a most valuable right simply because there is no statute prescribing a form for the action. In my opinion if a right exists, the courts of this State, being courts of law and equity, can give adequate relief as required by the constitution. And this was the opinion of this court in the recent case of Crescent City Gaslight Company vs. New Orleans Gaslight Company, 27 An. 139.

In considering the question that came up in that case, whether where a legal right is shown, there is a remedy, the court said: "If the plaintiff is injured to the extent claimed, and is crippled by the loss of its credit so as to be impeded in carrying out its contract with the State by

the pretensions and claims of defendant, founded on the act of March 1, 1860, which is alleged to be unconstitutional and void, the question is: can this court redress the wrong of which plaintiff complains and give the relief prayed for in the petition? We think that it can." After quoting article ten of the constitution, the court uses the following language: "It is urged, however, that this is not one of the actions mentioned in the Code of Practice. The authors of our law have not seen fit to prescribe forms for every legal demand, and they have not catalogued in the Code of Practice all the actions that may be brought in our courts; it is, perhaps, well that they have not done so, lest by omission of a form, substantial relief in some case might be denied to a person whose rights have been invaded. * * * In our opinion, plaintiff has shown an injury, and if there be no express law giving a remedy, it can appeal to the equity powers of the court for redress. Revised Code, article 21; Marbury vs. Madison, 1 Cranch. 177; Dodd vs. Benthal, 4 Heiskal 602; State vs. Patterson, N. J. Law 163; State vs. Jersey City, 34 N. J. Law 390; Story's Equity Jur. page 31; Broom's Legal Maxims, 180; Hilliard on Injunctions, 550; England vs. Lewis, 25 Cal. 357; Evans vs. Merchants' Bank, 51 Mo.; 22 Missouri, 348; see, also, Osburn vs. the Bank of United States, 9 Wheaton, 742. If, however, the cause of action were doubtful, we would feel inclined, in view of the public interest involved in the issues herein, to maintain the suit and proceed with the trial on the merits."

Applying the principles of the case cited to the one at bar, I would say, in the language of that decision, "plaintiff (Moncure) has shown an injury, and if there be no express law giving a remedy, he can appeal to the equity powers of the court for redress. * * * If, however, the cause of action were doubtful, I would feel inclined, in view of the public interest involved in the issues herein, to maintain the suit and proceed with the trial on the merits." I can not conceive that the public interest in a controversy between two gaslight companies can be so great as in the case at bar; indeed, no case has been presented to this court since I have had the honor of being a member of it involving issues of graver importance to the people of Louisiana. Besides the right of Mr. Moncure to the office of State Treasurer, to which the pleadings admit he was elected by a majority of 3876 votes, this case presents the grave question whether the decision of the Returning Board can defeat the will of the people; whether there is in this land of liberty a power greater than the people, upon whose arbitrary will the right to an office solely depends. The statute of 1872, creating the Returning Board, has not placed its action beyond the reach of judicial inquiry; on the contrary, it declares that the returns of election made by this board "shall be *prima facie* evidence in all courts of justice, and before all civil officers,

until set aside after a contest according to law;" that means after a contest in court according to the laws existing in the State.

It is urged, however, that no man has a vested right to an office, and therefore plaintiff has no cause to complain. This is a fallacy. The State Treasurer has no vested right to his office in the sense that the people may not at any time change the government by adopting a new constitution; but while the constitution of 1868 exists, this officer has a legal right to his office, which can not be divested except in the manner indicated by the constitution.

In my opinion, where a legal right of a citizen has been invaded, or where there is a wrong, there is adequate remedy, and the courts are open to administer justice without denial and unreasonable delay. I believe there is ample power in the court to redress the wrong of which plaintiff complains. I therefore dissent.

———

MORGAN, J., *dissenting.* I think that title to an office is a proper matter for judicial inquiry, and that the courts of the State should be, and by the constitution are, open for the trial of such issues. I think that the Superior District Court had jurisdiction over the matters in controversy between the parties, and that the suit should have been proceeded with. I therefore think that the case should be remanded.